## HOLLAND et al. v. C. & A. IMPORT CORPORATION et al.

District Court, S. D. New York.

June 20, 1934.

260

Briesen & Schrenk, of New York City (Fred A. Klein and Edward T. Kelly, both of New York City, of counsel), for plaintiffs.

Fritz Ziegler, of New York City, for defendants.

PATTERSON, District Judge.

The plaintiffs attempted to import into this country a shipment of Italian wine bearing the label "It Is It Is It Is." The shipment was detained by the collector of the port, at the instance of the defendant C. & A. Import Corporation, on the ground that the label was merely a translation of the latter's registered trade-mark "Est Est Est" and infringed it. The plaintiffs then brought this suit to restrain the collector from interference and to cancel the registered trade-mark as invalid. In the suit the plaintiffs moved for preliminary relief, asking that both defendants, the collector, and the proprietor of the trade-mark be restrained pendente lite from refusing entry to the plaintiffs' goods. The defendant C. & A. Import Corporation filed a counterclaim, charging infringement of its trade-mark "Est Est Est," and it also moved for a preliminary injunction to protect its trade-mark. The two motions, one by the plaintiffs and one by the corporate defendant, were heard at the same time.

It is shown by the plaintiffs' papers that Est Est Est is a name for wine made from grapes grown in the vicinity of Montefiascone, Italy, and that for at least a century the wine made in this locality has been known in Italy as Est Est Est. The name has its origin in a legend said to date from the twelfth century. The story runs that a German bishop traveling to Rome sent his servant ahead to mark the places on the route where the wine was good. The mark to be made was Est. The servant found the wine of Montefiascone so good that he marked on the houses Est Est Est. The bishop on his arrival agreed with the servant and drank such a quantity of the wine that he died. His monument is said to be in the cathedral there, with the inscription written by the servant:

"'Est—est—est.' Propter nimium 'est,' Dominus meus mortuus 'est.'"

There is a description of the wine of Montefiascone, "also called 'Est Est,'" in a book entitled A History and Description of Modern Wines, by Cyrus Redding, published in London in 1836, and also in a later edition of the same book published in 1860. In Wine, The Vine and The Cellar, by Thomas George Shaw, published in London in 1864, it is said (page 418): "In the northern portions of the Roman States the richest and most esteemed wine is the famous Est, grown in the vicinity of Montefiascone". Both of these books mention the legend.

That the wine of Montefiascone is also called "Est Est Est" is shown by more modern works. The Encyclopedia Americana (1932), under the title Montefiascone, Meyers "Konversations—Lexikon" (1904), in volume 6, page 128. Various pamphlets put out quite recently under the auspices of the Italian government carry Est—Est—Est as the descriptive word for a kind of wine, comparable to Chianti and other well-known wines. There can be no doubt then that, in Italy at least, the name "Est Est Est" is applied generically to wine made from grapes grown in the Montefiascone region.

The plaintiffs are a firm in the business of importing wines. They purchased a quantity of wine from a producer in the Montefiascone district, translated Est Est Est into It Is It Is It Is, and brought to the United States a shipment of wine with this label. A later shipment, that involved in this suit, was detained by the collector at the instance of the defendant C. & A. Import Corporation.

The C. & A. Import Corporation is a New York corporation. It and its predecessors have been in the business of importing and selling Italian wines since 1900. In 1908 it adopted the trade-mark "Est Est Est" for wines sold by it, and has used the mark indiscriminately on white Italian wines sold by it. This mark was registered in the Patent Office on June 21, 1910. It is claimed that upwards of 1,000,000 bottles so marked were sold prior to prohibition. The volume of business now being done is not stated. The defendant's affidavits tend to show that so far as the United States is concerned, the words Est Est Est on wine do not denote wine from any particular locality or of any particular kind.

The defendant also calls attention to a booklet fastened to the bottles which the plaintiffs are seeking to import. The booklet sets forth the legend of the bishop and Est Est Est, and then states: "To perpetuate the name of this wine our company adopted it for its firm name. Italian law forbids the use of the Latin word 'Est' so we have patented, the world over, the words 'It Is It Is It Is.' "

█ In detaining the plaintiffs' goods, the collector acted under section 526 of the Tariff Act of 1930 (19 USCA § 1526), to the effect that goods of foreign manufacture which infringe a trade-mark registered and owned by a citizen or corporation here shall not be imported into the United States without consent of the owner of the trade-mark. This statute is presumptively a sufficient warrant for the detention. But, if an importer takes the position that the domestic trade-mark is not entitled to registration, he may have that issue tried in the manner here resorted to—by suit against the owner of the registered trade-mark and the collector to have the goods admitted. Le Blume Import Co. v. Coty (C. C. A. 2) 293 F. 344, at page 347. Congress did not intend to make the mere registration of trade-mark final and conclusive against the importer, or to relegate him to a proceeding in the Patent Office to cancel the registration as his only relief.

It is also clear that the two marks, the Latin "Est Est Est" and the English translation "It Is It Is It Is," are similar enough to cause confusion, and that the defendant's mark would be infringed by the sale of wine bearing the plaintiffs' mark. It is an issue then whether the defendant's trade-mark "Est Est Est" is valid and entitled to registration.

█ 2. By the weight of authority, a word commonly used in other countries to identify a kind of product and there in the public domain as a descriptive or generic name may not be appropriated here as a trade-mark on that product, even though the person claiming the word was the one who introduced the product here and the word then had no significance to our people generally. The rule is a just one. Why should the first comer be given a monopoly of the word when he knew all along that he had no better right to it than any one else? If others who may bring the same product here later cannot sell it under its real name, fair competition would be greatly impeded.

In Dadirrian v. Yacubian, 98 F. 872 (C. C. A. 1), the plaintiff was denied the right to use Matzoon as a trade-mark for fermented milk; it being shown that the article was a well-known Armenian beverage and that Matzoon was the regular Armenian word for it. The fact that the plaintiff had brought the beverage here at a time when neither it nor the name was known in these parts was deemed immaterial.

The same result was reached by the Chancery Division in Davis v. Stribolt, 59 L. T. N. S. 854. The Norwegian word "Bokol," meaning bock beer and first used in England by the plaintiffs, was held not to be a valid trade-mark. In discussing the contention in favor of the validity of the mark, Chitty, J., said (page 855): "If the argument were well founded the importer into this country of any foreign article, not previously known in this country, could restrain anyone else from using the name by which it was called in the country where it was produced. * * * It is plain no such proposition could be maintained."

The same view was taken in Burke v. Cassin, 45 Cal. 467, 13 Am. Rep. 204, where it was held that Schnapps, a Dutch gin, could not be taken as a trade-mark in this country; the word being a generic one. See, also, Italian Swiss Colony v. Italian Vinyard Co., 158 Cal. 252, 110 P. 913, 32 L. R. A. (N. S.) 439; DeBevoise Co. v. H. & W. Co., 69 N. J. Eq. 114, 60 A. 407; Godillot v. Hazard, 49 How. Pr. (N. Y.) 5; Roncoroni v. Gross, 92 App. Div. 221, 86 N. Y. S. 1112; Selchow v. Chaffee & Selchow Co., 132 F. 996 (C. C. N. Y.); Nims on Unfair Competition and Trade-marks, § 208.

█ The proof here is convincing that in Italy or in part of Italy the words "Est Est Est" are in common use to signify the wine made in Montefiascone. The name is descriptive of that type of wine, and was commonly applied to it long before the defendant took the name as a mark to identify wines sold by it here. If it be the fact that in this country only connoisseurs were familiar with Est Est Est as a type of Italian wine, the defendant's position is no better.

The defendant presses Le Blume Import Co. v. Coty, supra, as an authority in its favor. It is true that there are certain similarities in the facts of the two cases. But in the Coty Case the word "L'Origan" on perfumes was held suggestive rather than descriptive. I am therefore persuaded that the defendant has no right to monopolize the words "Est Est Est" on bottles of wine and that its trade-mark is not a valid one.

█ 3. But the plaintiffs, for reasons peculiar to themselves, are not in condition to get the

relief they seek. They are representing on their bottles that they have "patented" (meaning trade-marked) the words "It Is It Is It Is" the world over. In the first place, this is not the truth. They have not "patented" the mark or secured a trade-mark on it in this country. In the second place, they are representing that the mark is their exclusive property, not to be taken by any other concern, whereas their contention in this case is and necessarily must be that the words belong to no particular proprietor. They cannot take the defendant to task for having done the same thing that they are doing—claiming a trade-mark in a name that is common property. See Ubeda v. Zialcita, 226 U. S. 452, 33 S. Ct. 165, 57 L. Ed. 296; Straus v. Notaseme Co., 240 U. S. 179, 181, 36 S. Ct. 288, 60 L. Ed. 590; Diamond Crystal Salt Co. v. Worcester Salt Co., 221 F. 66 (C. C. A. 2).

The case then is one of those where each party takes advantage of his rival's weakness rather than of his own strength. The plaintiffs' motion will be denied because of their representations of an exclusive trade-mark. The defendant's motion will be denied because of the invalidity of its trade-mark. The order may be settled on two days' notice.