48 CCPA

**BART SCHWARTZ INTERNATIONAL TEXTILES, LTD., Appellant,**

v.

**FEDERAL TRADE COMMISSION, Appellee.**

**Patent Appeal No. 6599.**

United States Court of Customs and Patent Appeals.

April 14, 1961.

Worley, Chief Judge, and Martin, J., dissented.

Fulton Brylawski, Washington, D. C. (E. Fulton Brylawski, Washington, D. C., of counsel), for appellant.

Jess C. Radnor, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and WILLIAM H. KIRKPATRICK, Judge.[*]

SMITH, Judge.

The Federal Trade Commission, acting under Section 14 of the Lanham Act (15 U.S.C. 1064, 15 U.S.C.A. § 1064), petitioned for cancellation of appellant's registration No. 623,601, issued March 20, 1956, on an application filed June 20, 1955, for the mark "FIOCCO" for "textile fabrics in the piece of cotton, rayon, synthetic fibers, and mixtures thereof." First use and use in commerce is alleged to be May 2, 1955.

The single issue before us, viz., was appellant's registration No. 623,601 "obtained fraudulently" within the meaning of Sec. 14(c) of the Lanham Act (15 U.S.C. 1064(c), 15. U.S.C.A. § 1064(c), must be resolved against the factual background of this case as revealed in the record before us.

The present proceeding is the first of its kind to reach this court. To understand the fact situation upon which it is based it is necessary to begin with the activities of the George White Textile Company in Kansas City during the early 1950's. This company had contracts with some Italian textile manufacturers and at that time was engaged in the business of importing textile fabrics from Italy.

The fabrics of chief interest in this business were those called "fiocco" in

Italy. Such fabrics are made wholly or in part of spun rayon in which a continuous filament of rayon is cut to form short staple fibers. The cut fibers are spun to produce a yarn which is then woven into textile fabrics. This method of utilizing rayon was developed in Italy as early as 1929, and the new product, both in the form of "fiocco" yarns and fabrics containing stated amounts of "fiocco," was extensively promoted and sold in the United States throughout the following decade and until trade in it was terminated by the Second World War.

The record is clear that the word "fiocco" has for at least twenty years been used in the Italian textile industry to mean staple rayon yarn as distinguished from continuous filament rayon. The word "fiocco" has been so used in the official tariff regulations of Italy for many years. Since at least 1945, it has been accepted by the United States Customs Bureau as meaning staple rayon.

George White, the dominant factor in the George White Textile Company, went to New York City during the latter part of August, 1954, to secure financial backing and marketing facilities for his company. While in New York he met Bart Schwartz, a promoter and advertising specialist in the over-the-counter piece goods trade, whom he interested in the Italian textile fabrics, chiefly those made wholly or in part of "fiocco." As a result of this meeting an agreement was reached, and Bart and White International Textiles, Ltd., was incorporated under the laws of New York. Later, White and Schwartz decided that they, together with Zecchin (one of White's partners) and Rudolph (bookkeeper for Schwartz), should visit Italy to secure franchises from the Italian manufacturers. During the trip to Italy in October of 1954, the party visited numerous Italian manufacturers and secured a number of exclusive, three-year franchises for the Western Hemisphere. While there, they ordered

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

substantial amounts of samples [1] of fabrics made of "fiocco" which were shipped soon thereafter.

After returning to the United States, Schwartz severed relations with White, organized Bart Schwartz International Textiles, Ltd., the appellant herein, and had this corporation substituted for the Bart and White International Textiles, Ltd., in all of the then existing franchises with the Italian manufacturers.

Schwartz subsequently severed relations with Zecchin and proceeded without either White or Zecchin in the promotion of business under the Italian textile import franchises. During the latter part of 1954 and early 1955, appellant received samples of fabrics containing specified amounts of "fiocco" and Schwartz corresponded with the Italian producers concerning the problem of "whether fabrics made of Fiocco yarn can be sold as unconditionally guaranteed washable." During the period from October 1954 until May 1955, shipping documents and letters received by appellant refer to the composition of the imported fabrics in terms of their "fiocco" content.

On June 20, 1955, appellant filed its application to register the word "Fiocco" for "textile fabrics in the piece of cotton, rayon, synthetic fibers and mixtures thereof," which resulted in the granting of registration No. 623,601, here in issue.

Shortly after the registration was granted, appellant filed the registration with the United States Customs Bureau, and for a time successfully stopped the importation of fabrics made of "fiocco." A "tear sheet" service was retained to check on advertising of "fiocco" fabrics by others and information thus secured was transmitted to appellant's attorneys who sent notices of infringement in large numbers to those in the trade who had advertised "fiocco" fabrics, and two suits for infringement of the trademark "Fiocco" were instituted. At this point, the Federal Trade Commission filed the petition for cancellation here in issue.

Subsequently, appellant instituted four more infringement suits based on its registration.

■ There is no question but that the Italian word "fiocco" is descriptive of "spun rayon" and as such is subject to the general rule that a descriptive word in a foreign language cannot be registered in the United States as a trademark for the described product. See In re Northern Paper Mills, 64 F.2d 998, 20 CCPA 1109, and cases there cited. This fact is of no assistance to the Federal Trade Commission here, for Congress has specifically limited the grounds upon which it may seek cancellation of a trademark registration to those listed in subsections (c) and (d) of Section 14 of the Lanham Act (15 U.S.C. § 1064(c) and (d), 15 U.S.C.A. § 1064(c, d). The Federal Trade Commission has, accordingly, asserted as "Ground One" of its petition to cancel the registration:

"* * * that said registration was obtained fraudulently in that at, and prior to, the time that application was made for said registration, the registrant was not the owner of the mark within the meaning of Section 1(a) (1) of the Trademark Act of 1946 [15 U.S.C.A. § 1051(a) (1)] and the registrant knew that other persons, firms, corporations or associations had the right to use and were using the mark sought to be registered contrary to the statement made and filed by the registrant as required by Section 1(a) (1) of said Trademark Act of 1946; * * *"

■ However, in the present proceeding, the Federal Trade Commission can prevail only by showing that the registration "was obtained fraudulently" within the meaning of this term as used in Section 14(c) of the Lanham Act, supra. The petition for cancellation is based upon alleged fraudulent misrepresentations in registrant's sworn declaration as to its ownership of the mark and

---

1. A "sample," in this business, according to the testimony of George White, ranged from 5 yards up to 30 or 40 yards.

as to the rights of others to use the mark. To sustain the present cancellation petition under Section 14(c) of the Lanham Act, it is sufficient to prove that at the time of the application for registration the registrant knew that others had the right to use and were using the word "fiocco" as the name of the product.

The Trademark Trial and Appeal Board in granting the petition for cancellation (121 USPQ 99), based its decision, at least in part, on the ground that appellant had withheld from the Patent Office a material fact, i. e., that Bart Schwartz at the time of signing the sworn statement on behalf of appellant knew that the word "fiocco" was an Italian word used to mean staple rayon and that by withholding such information the registration "was obtained fraudulently." Appellant here challenges this holding and asserts that it fully complied with the statutory requirements including the signing of the verified declaration containing the statement required by Section 1(a) (1) of the Lanham Act. In support of its position, appellant asserts that nothing in the Lanham Act requires an applicant for trademark registration to disclose the information which the board held should have been disclosed.

The position of the Trademark Trial and Appeal Board is fallacious in that it is based on the assumption that registrant had a "duty" to disclose to the Patent Office that the Italian word "fiocco" meant staple rayon. No authority is cited by the board for this proposition. Any "duty" owed by an applicant for trademark registration must arise out of the statutory requirements of the Lanham Act, particularly those found in Section 1(a) (1). This section requires merely that an applicant for registration verify a statement that "no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive."

The obligation which the Lanham Act imposes on an applicant is that he will not make *knowingly* inaccurate or *knowingly* misleading statements in the verified declaration forming a part of the application for registration.

The mere withholding of information as to the meaning of the Italian word "fiocco" is not such a fraudulent withholding of information as to warrant cancellation of the mark. Nevertheless, despite this holding it is clear to us that the registration "was obtained fraudulently" within the meaning of Section 14(c) of the Lanham Act because of the misrepresentation in the declaration concerning what appellant knew to be the rights of others to use the word "fiocco."

The evidence, both direct and circumstantial, establishes to our satisfaction that Schwartz on May 18, 1955, at the time he verified the application for registration of "Fiocco" as appellant's trademark knew that others had the right to use this word in "commerce" for textile fabrics. His statement in the declaration is a misrepresentation of fact as distinguished from the mere expression of an opinion.

Bart Schwartz signed the verified declaration on behalf of appellant to induce the Patent Office to grant the registration in reliance upon this misrepresentation of fact. From the record as a whole it seems clear to us that Schwartz as appellant's president was not acting in good faith in this respect at the time he signed the declaration. From what we have found in the record it seems clear that he possessed knowledge of facts which was contrary to the statement made in the declaration.

One acting in good faith who has been mistaken as to an essential fact would, it seems to us, wish to correct such a mistake when it was called to his attention. We think it is significant, therefore, that instead of so acting Schwartz, when called as a witness to testify in this proceeding, concocted such a fanciful history of how he "developed" the mark that we are unable to give it credence.

The extent of this fabrication is shown in the testimony of Schwartz. He testified that at the end of the trip to Italy in October of 1954, he discussed with an associate at breakfast in Milan the desirability of finding a "gimmick" in the textile and fashion world which would dramatize and "promote Italy to the masses." While engaged in this discussion, he testified he was attracted by the Italian wording on a box of Kellogg's corn flakes and noted "Fiocchi di Granoturco" (Italian equivalent of corn flakes), and that he told his associate that they "must study how to respell this name where it's a fast, quick name and will have a meaning." According to his testimony, he stayed up for hours, and at four o'clock in the morning he woke his associate and told him "Lou, I've got it" —and he showed him the word "fiocco."

We take the same view of this testimony as that so well expressed by the Trademark Trial and Appeal Board:

"It taxes credulity to believe that Mr. Schwartz, a self-styled textile promotion man, would not have seen or heard of the word "fiocco" in at least some of the rayon textile mills in Italy when the term has been in such long and common usage there to differentiate spun or short staple rayon from continuous filament rayon; and it taxes credulity even more to believe that from seeing the words "Fiocchi di Granoturco" on a box of corn flakes Mr. Schwartz, who speaks no Italian, independently arrived at the word "Fiocco" for use as a trademark on spun rayon or staple rayon textile fabrics—a word which has been in long and common usage in Italy to mean spun or short staple rayon."

We are unable to reconcile this fabrication in the testimony here presented with appellant's protestations of good faith in making the statements on which the registration was based.

It seems to be the essence of appellant's argument here that the rights of others were not misrepresented in the declaration because the trademark was sought for textile fabrics and not for the materials from which such fabrics were made. While now admitting knowledge of the use by others of the word "fiocco" to designate spun rayon fibers and the fiber content of fabrics, appellant would here justify the statement made in the declaration on the ground that such use by others was not the use of "fiocco" as a trademark for textile fabrics.

The phrase "textile fabrics" as used in the registration is somewhat redundant as to woven fabrics in that such fabrics are "textiles." Webster's New International Dictionary, Second Edition (1949) defines textile, a noun, as "that which is, or may be woven; a woven fabric or a *material for weaving*" (emphasis added). The registration as granted covers "textile fabrics in the piece of cotton, rayon, synthetic fibers and mixtures thereof." We think it is significant that Schwartz testified the mark "fiocco" is not used on cotton materials and that it is used only on materials which contain "fiocco" or which are 100% "fiocco."

Words such as "wool," "cotton," and "rayon" have long been used to designate both the fiber and the textile fabrics made therefrom. The record is replete with instances of use by others, prior to that alleged by appellant, of the word "fiocco" as the name of the material from which a textile fabric was woven. The record also contains numerous examples of the use by others of the word "fiocco" to designate the fiber content of various textile fabrics prior to appellant's asserted adoption of this word as its trademark.

The record also clearly establishes that Bart Schwartz had knowledge of this use of the word "fiocco" by others at the time he signed the declaration as president of and on behalf of appellant  At the first meeting between Schwartz and George White in White's hotel room in New York in August of 1954, White displayed his imported fabric samples to Crandall and Schwartz, which samples included many fabrics which were marked to show their "fiocco" content. White at

that time explained the meaning of the word, which on the present record appears to have been then unknown to both Crandall and Schwartz. While the testimony before us is not clear as to subsequent meetings, there appears to have been a series of other meetings between Schwartz and White.

White, called as a witness testified that he had imported samples of fabrics made in Italy which he said had "always been known as fiocco" and which were described in sales to him as "fiocco." He testified also that when Schwartz first came to his room in the hotel in New York he showed Schwartz samples of Italian fabrics which had been brought from Kansas City. White's testimony that the fabric samples he showed Schwartz were marked "fiocco" is as follows:

"Q48. Now, did any of these samples that you had and showed to Mr. Bart Schwartz include fiocco? A. Yes, it did, sir.

"Q49. Was fiocco marked on any of the samples? A. Some of them were marked 'fiocco.'

"Q50. In what way was fiocco marked? A. It was marked right on the edge of cloth similar to what Dell'Aqua has got right there.

"Mr. Radnor: The witness pointing to Petitioner's Exhibit R.

"Q51. Were they marked in the manner that appears on Petitioner's Exhibit R? A. Yes, sir. As is. At that time they weren't marked on the selvage. Just at the edge of the piece of cloth. Just like that." [2]

During the visit to the Italian producers in October 1954, Schwartz with the other members of the party visited numerous manufacturers and the fabrics of each producer were carefully examined and the "fiocco" content noted. In some instances, there were discussions with the manufacturers to the end that the "fiocco" content of the fabrics should predominate over that of other materials sufficiently to allow entry of the fabrics in the United States as rayon rather than as other fabrics which might require payment of a higher tariff rate.

It is clear, therefore, that prior to the date on which Schwartz, as president of appellant corporation, signed the declaration forming a part of the application for trademark registration, he had knowledge of the prior use by others both in Italy and in the United States of the word "fiocco" to identify the fiber content of the textile fabrics which contained fiocco yarn. The word "fiocco" when so used designates the textile fiber in the same way that wool, cotton, flax and other names identify these fibers as being the material from which such textile fabrics are made. This knowledge we impute to the corporate applicant as its responsibility for the factual misrepresentation made by Schwartz in the declaration.

We conclude, therefore, that the statement in the declaration sworn to by Schwartz that "no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use such trade-mark in commerce which may lawfully be regulated by Congress either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive" was executed despite factual information to the contrary which we find from the evidence he possessed at that time.

Under the circumstances of this case, we find that such a false statement of fact in the declaration supports a holding

---

2. Appellee's motion to correct diminution of the record to include "petitioner's Exhibit R," referred to in the foregoing portion of the testimony, was opposed by appellant for the reason, among others, that "appellee-petitioner's Exhibit 'R' was not competent, relevant or probative evidence in the proceedings below, though it was introduced as part of the deposition of George White over appellant's objection." In view of this objection, we denied the petition and are left with the testimony of White which establishes that he showed Schwartz samples of fabrics which included "fiocco" some of which were marked "fiocco"— "right on the edge of cloth."

that the registration in issue "was obtained fraudulently" within the meaning of Section 14(c) of the Lanham Act and that it should be cancelled.

■ The issue thus far discussed relates solely to "Ground One" of the petition to cancel the registration. "Ground Two" of the petition for cancellation is based on the alleged descriptiveness of the mark but has not been considered for it does not state a ground for cancellation which can be asserted by the Federal Trade Commission in a cancellation proceeding under Section 14 of the Lanham Act.

■ We find that the additional matter certified to the court as a part of the record was reasonably necessary to a proper determination of the issues raised by the assignment of errors. Therefore, the costs of printing such additional material are taxed against the appellant.

For the reasons herein set forth, the decision of the Trademark Trial and Appeal Board is affirmed.

Affirmed.

WORLEY, Chief Judge (dissenting).

There is entirely too much doubt in my mind that the record fairly supports the majority view that the registration "was obtained fraudulently" within my understanding of Section 14(c). I would reverse.

MARTIN, Judge (dissenting).

I agree with the majority that it was not incumbent upon Schwartz to inform the Patent Office that "Fiocco" was the Italian word used to describe spun rayon

fiber if that be so.[1] However, I disagree with the ultimate conclusion of the majority because I believe that when a court finds one guilty of falsely swearing to a document, it must set forth very precisely the particular evidence which supports the charge.

The majority points out no *specific* evidence which can be the basis of its finding that Schwartz swore falsely in connection with his declaration concerning the *trademark*[2] at issue which the court must do to sustain its finding that Schwartz obtained the trademark fraudulently.

Schwartz, on behalf of Bart Schwartz International Textiles, Ltd., stated in the application that said corporation,

"* * * has adopted and is using the *trade-mark* shown in the accompanying drawing for Textile fabrics in the piece of cotton, rayon, synthetic fibers and mixtures thereof, in Class 42, Knitted, netted and textile fabrics, and substitutes therefor, and presents herewith five specimens [(or facsimiles)] showing the *trade-mark* as actually used in connection with such goods, the *trade-mark* being applied to labels affixed to the goods, and requests that the same be registered in the United States Patent Office on the Principal Register in accordance with the Act of July 5, 1946.

"The *trade-mark* was first used on the goods specified on May 2, 1955 and first used on said goods in commerce among the several states, which may lawfully be regulated by

1. Although the record in this case may indicate that "fiocco" is used by the Italian textile industry to describe spun or staple rayon fibers, according to Marolli, "Technical Dictionary" (English-Italian, Italian-English, Firenze, 1957), the Italian textile industry uses "fiocco" to mean *floccus, flock,* or *staple* when referring to material such as wool. Further, according to Denti, "Technical Dictionary" (Italian-English, English-Italian, Milan, 1955), when referring to textiles, the Italian equivalent of *staple fiber* is "fibra fiocco," the Italian equivalent

of *staple rayon* is "fiocco raion," the Italian equivalent of *staple rayon yarn* is "filato di fiocco raion." It is apparent, therefore, insofar as these dictionaries are concerned, "fiocco" means *staple* when used in the textile sense.

2. "*Trade-mark.* The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." (Trade-Mark Act of 1946, § 45, 15 U.S.C.A. § 1127.)

Congress on May 2, 1955." [Emphasis mine.]

He declared:

"Bart B. Schwartz, being duly sworn, deposes and says that he is the President of Bart Schwartz International Textiles, Ltd. the applicant named in the foregoing statement, that he believes that said corporation is the owner of the *trademark* which is in use in commerce among the several states and that no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use such *trade-mark* in commerce which may lawfully be regulated by Congress either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive, that the drawing and description truly represent the *trade-mark* sought to be registered, that the specimens [(or facsimiles)] show the *trade-mark* as actually used in connection with the goods, and that the facts set forth in the statement are true." [Emphasis mine.]

Regardless of the question of descriptiveness as it pertains to the imported Italian fiber or fabric containing the fiber, or the conclusions to which one may come as to Schwartz's knowledge of the use of the word by others in a descriptive manner, the majority fails to cite any specific testimony which established that any person or corporation was using "Fiocco" as a *trademark* to identify the source or origin of textiles containing this fiber or that Schwartz had knowledge that any person or corporation was using "Fiocco" as a *trademark* for spun rayon or textiles made of that yarn at the time the declaration was made.

I do not believe that the testimony as to Schwartz's knowledge that "Fiocco" was used to describe spun rayon or textiles containing spun rayon can be the basis for a charge of fraud involving a

declaration concerning the use of the word as a *trademark*. It should be noted he declared his company was using the trademark for textile fabrics and that his company is the owner of the *trademark* and that no other person, firm or corporation, to the best of his knowledge or belief has "the right to use such *trademark*." [Emphasis mine.]

It seems to me that if the majority opinion is carried to its logical conclusion many who file or have filed applications under section 2(f) of the Lanham Act, 15 U.S.C.A. § 1052(f), for the registration of merely descriptive words as *trademarks* could be subject to the charge of fraud even though the only evidence offered is that others have used the words descriptively which fact was known to the would-be registrants.

To require one who has openly used a word as a trademark for the purpose of identifying his goods for a number of years to know that because others have used it descriptively he is subject to a charge of fraud if he obtains registration, would be establishing a precedent which will cause undue restraint or hardship on past, present and future applicants not contemplated or warranted by the provisions of the Lanham Act.

For example, this court has recently had before it a case involving facts wherein an applicant might have been charged with fraudulently obtaining a registration if the mark had been registered and the case involved cancellation rather than opposition proceedings under this majority opinion. In that case, applicant, using declaration similar to that at bar, endeavored to register "Power Shop" as its trademark for woodworking saws, whereas another corporation had been using the same words descriptively for many years on the same type of goods which were trademarked "Shopsmith."[3] Although there was no direct evidence in the record of that case that applicant's officers were aware of that descriptive use by the other corporation, in view of

3. DeWalt, Inc. (Pennsylvania Corp.), DeWalt, Inc. (Delaware Corp.), (Assignee by mesne assignments, substituted) v.

Magna Power Tool Corporation, Cust. & Pat.App., 289 F.2d 656.

the extensive advertising of competitive goods by that other corporation,[4] I think it can be assumed and could easily have been proven that the applicant had such knowledge.

Under those circumstances, the charge of fraudulently obtaining the registration would be just as applicable in the DeWalt case as it is in the case at bar. Of course, I do not believe that it applies in either situation, but it appears to me that this is the logical result of the majority opinion.

4. For example, almost four million circulars containing a descriptive use of "Power Shop" were distributed by the other corporation to its dealers and prospective purchasers of its competitive merchandise during a 3½-year period before the applicant attempted to obtain registration of the same words as a trademark.