175 F.3d 266
 50 U.S.P.Q.2d 1626
 OTOKOYAMA CO. LTD., a Japanese Corporation,
Plaintiff-Counter-Defendant-Appellee,
v.
WINE OF JAPAN IMPORT, INC., A New York Corporation and Does
1 through 50, inclusive,
Defendant-Counter-Claimant-Appellant.
 Docket No. 97-9611.
 United States Court of Appeals,
Second Circuit.
 Argued June 16, 1998.
Decided April 29, 1999.
 
 Arlana S. Cohen, Liddy Sullivan Galway Begler & Cohen, P.C., New York, N.Y. (Kent B. Goss, Valerie M. Goo and Yuji Iwanaga, Pillsbury, Madison & Sutro, L.L.P., Los Angeles, CA, Of Counsel), for Plaintiff-Counter-Defendant-Appellee.
 Michael A. Cornman, Schweitzer Cornman Gross & Bondell LLP, New York, N.Y., for Defendant-Counter-Claimant-Appellant.
 Before: MINER, McLAUGHLIN, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 This is a trademark dispute between two importers of Japanese sake. Otokoyama Co. Ltd., the registered owner of four U.S. trademarks for the word "otokoyama" and Japanese language pictograms signifying that word, filed suit against Wine of Japan Import, Inc., alleging, inter alia, that defendant infringed its trademark in violation of the Lanham Act, 15 U.S.C. § 1051 et. seq., by importing a brand of sake labelled "Mutsu Otokoyama." Defendant counterclaimed, seeking to cancel plaintiff's trademarks under § 14 of the Lanham Act, 15 U.S.C. § 1064. Defendant contended that 1) otokoyama is a generic term signifying a type of sake and is therefore ineligible for trademark protection, and 2) plaintiff's trademarks were "obtained fraudulently" within the meaning of 15 U.S.C. § 1064(3).
 
 
 2
 After a hearing, the district court granted plaintiff's motion for a preliminary injunction. On appeal from that order, defendant argues that the district court erred when it refused to consider evidence of the meaning and usage of otokoyama in Japan and refused to consider a ruling of the Japanese trademark office denying plaintiff's application for trademark protection on the ground that otokoyama is generic. We agree that the district court erred in both respects. Applying the correct legal standard and crediting defendant with the improperly excluded evidence, we find that defendant raises sufficient doubt as to the validity of plaintiff's trademark to overcome plaintiff's showing of likelihood of success. We therefore vacate the preliminary injunction.
 
 BACKGROUND
 
 3
 Plaintiff, a Japanese corporation, has been brewing sake--a Japanese wine made from fermented rice--on the northern island of Hokkaido since the 1930s. In Japan, its sake is sold under the name "Hokkai Otokoyama," Hokkai being a reference to the island of Hokkaido. Since 1984, plaintiff has imported its sake into the U.S., where it is marketed and sold as "Otokoyama" brand sake. Plaintiff registered the English transliteration of otokoyama and three trademarks of Japanese pictograms comprising otokoyama with the U.S. Trademark Office.
 
 
 4
 Defendant is a domestic corporation, which imports various brands of sake into the U.S. Defendant's importation and sale of sake under the designation "Mutsu Otokoyama," begun in or around 1997, is the subject of this suit. As noted, plaintiff claims the defendant's use of otokoyama infringes plaintiff's trademark, while defendant claims that because otokoyama is a generic word for a type of sake, it is not eligible for use as a trademark for sake.
 
 
 5
 In Japanese pictograms, the word otokoyama is comprised of the characters for "man" and "mountain." The parties dispute the meaning and history of the word in relation to sake, but they agree that its use in Japan in relation to sake dates back at least to the Edo period, which began in the seventeenth century. Paintings from the period show samurai warriors drinking from sake barrels displaying the characters for otokoyama. In Japan, between ten and twenty brewers in addition to plaintiff designate sake as "otokoyama," often (like plaintiff) adding a geographical modifier.
 
 
 6
 Plaintiff has been unsuccessful in its attempts to obtain trademark rights in Japan for otokoyama. In 1962 (then doing business under the name Yamazaki Shuzo K.K.) plaintiff sought to register the characters for "Hokkai Otokoyama" as a trademark in Japan. The application was rejected, and in 1966 the Japanese Patent Office ("JPO") affirmed the rejection. The JPO issued a written decision, whose exact translation is disputed,[1] but which apparently signified that the word otokoyama was not eligible for trademark protection because of its longstanding use as a designation for sake by other traders in the industry.
 
 
 7
 In 1984, plaintiff became the first company to market sake labelled otokoyama in the United States. Two years later, plaintiff petitioned the United States Patent and Trademark Office ("USPTO") to register the Kanji characters for otokoyama. In processing plaintiff's application, the USPTO asked plaintiff to provide an English translation of the characters. Plaintiff responded with a sworn statement that "to applicant's knowledge, the mark is an arbitrary, fanciful term. Accordingly, the mark cannot be translated." The USPTO granted plaintiff's request to register the mark in 1988.
 
 
 8
 Between 1992 and 1995, plaintiff sought and obtained U.S. registrations for three other otokoyama trademarks: one each for the Katakana and Hiragana[2] characters for otokoyama, and one for the English transliteration. Again the USPTO asked for English translations, to which plaintiff again responded in sworn declarations that otokoyama is "an arbitrary, fanciful" term that "has no meaning and cannot be translated."
 
 
 9
 In April, 1997, plaintiff wrote to defendant demanding that it cease importation, distribution, advertisement and sale of "Mutsu Otokoyama." Defendant replied that it believed plaintiff's trademarks were invalid, and refused.
 
 
 10
 Plaintiff filed suit, alleging trademark infringement, unfair competition, and false designation of origin under the Lanham Act, as well as state law violations, and moved for a preliminary injunction. As noted, defendant challenged the validity of plaintiff's trademarks on two grounds: first, that otokoyama is a generic term for a type of sake, and second, that plaintiff secured its U.S. registrations by fraudulent misrepresentations that concealed from the USPTO otokoyama's usage as a generic term in Japan.
 
 
 11
 At the preliminary injunction hearing, the court declined to consider any meaning the word otokoyama might have outside the United States, stating that "[t]he meaning of a term outside of the United States is irrelevant" to a determination of entitlement to the protection of the U.S. trademark laws. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 985 F.Supp. 372, 376 (S.D.N.Y.1997). The court also declined to consider defendant's proffer of the 1966 decision of the Japanese Patent Office which denied plaintiff's request to register otokoyama in Japan. Id. at 375. Concluding that plaintiff had shown both irreparable harm and likelihood of success on the merits, the court granted the preliminary injunction. Id. at 379.DISCUSSION
 
 
 12
 A party seeking a preliminary injunction must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. See Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir.1997). The plaintiff in a trademark infringement action establishes a likelihood of success by showing both 1) a legal, exclusive right to the mark, and 2) a likelihood that customers will be confused as to the source of the infringing product. See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir.1986). To prove likelihood of success below, plaintiff showed that since 1984 it had been importing and selling its sake in the United States under the label "otokoyama," that it had registered this trademark with the USPTO, and that it had successfully protected the mark against unauthorized use by others.
 
 
 13
 We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion, which is shown if, inter alia, the district court applies the incorrect legal standard. See Genesee Brewing Co., 124 F.3d at 142. Because the court applied the wrong legal standard and excluded relevant evidence favorable to the defendant's claim, we vacate the injunction.
 
 
 14
 Defendant contends the district court erred in refusing to consider evidence that otokayama is a generic term for sake, or a type of sake, in the Japanese language as spoken in Japan, and that the district court erred in excluding the decision of the Japanese Patent Office. (JA. 847) We agree with defendant that the district court was mistaken in its understanding of the potential significance of the meaning of otokoyama in the Japanese language. We also agree with the defendant that the ruling of the Japanese Patent Office may have been admissible for certain relevant purposes.
 
 I.
 
 15
 It is a bedrock principle of the trademark law that no trader may acquire the exclusive right to the use of a term by which the covered goods or services are designated in the language. Such a term is "generic." Generic terms are not eligible for protection as trademarks; everyone may use them to refer to the goods they designate. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 116-17, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Harley-Davidson, Inc. v. Grottanelli, 164 F.3d 806, 810 (2d Cir.1999); Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9-10 (2d Cir.1976); Weiss Noodle Co. v. Golden Cracknel & Specialty Co., 48 C.C.P.A. 1004, 290 F.2d 845, 847 (C.C.P.A.1961); J. Kohnstam, Ltd. v. Louis Marx & Co., 47 C.C.P.A. 1080, 280 F.2d 437, 440 (C.C.P.A.1960). This rule protects the interest of the consuming public in understanding the nature of goods offered for sale, as well as a fair marketplace among competitors by insuring that every provider may refer to his goods as what they are. See CES Publ'g Corp. v. St. Regis Publications, Inc., 531 F.2d 11, 13 (2d Cir.1975) (Friendly, J.) ("To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold [is impermissible because] a competitor could not describe his goods as what they are.") (citations omitted); see also Restatement (Third) of Unfair Competition § 15 cmt. b ("A seller ... cannot remove a generic term from the public domain and cast upon competitors the burden of using an alternative name.").
 
 
 16
 The same rule applies when the word designates the product in a language other than English. This extension rests on the assumption that there are (or someday will be) customers in the United States who speak that foreign language. Because of the diversity of the population of the United States, coupled with temporary visitors, all of whom are part of the United States marketplace, commerce in the United States utilizes innumerable foreign languages. No merchant may obtain the exclusive right over a trademark designation if that exclusivity would prevent competitors from designating a product as what it is in the foreign language their customers know best. Courts and the USPTO apply this policy, known as the doctrine of "foreign equivalents," see 2 J. Thomas McCarthy McCarthy on Trademarks & Unfair Competition § 12:41 at 12-83, 12-84 (1996 ed.), to make generic foreign words ineligible for private ownership as trademarks. See Weiss Noodle, 290 F.2d at 846-47 (applying ban on trademarking generic names to foreign equivalents, and holding that "ha-lush-ka," phonetic spelling of Hungarian word for "egg noodles," is non-protectible); see also In re Le Sorbet, Inc., 228 U.S.P.Q. 27, 28 (T.T.A.B.1985)("sorbet," French word for fruit ice, held non-protectible); In re Hag Aktiengesellschaft, 155 U.S.P.Q. 598, 599-600 (T.T.A.B.1967)("kaba," coffee in Serbian and Ukranian, held non-protectible).
 
 
 17
 This rule, furthermore, does not apply only to words that designate an entire species. Generic words for sub-classifications or varieties of a good are similarly ineligible for trademark protection. See, e.g., Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 148-49 (2d Cir.1997) ( "honey brown" held generic for type of ale); In re Cooperativa Produttori Latte E Fontina Valle D'Acosta, 230 U.S.P.Q. 131, 134 (T.T.A.B.1986) ("fontina" held generic for a type of cheese); In re Northland Aluminum Prods., 221 U.S.P.Q. 1110, 1112 (T.T.A.B.1984), ("bundt" held generic for variety of ring-shaped coffee cake), aff'd, 777 F.2d 1556, 1561 (Fed.Cir.1985); Italian Swiss Colony v. Italian Vineyard Co., 158 Cal. 252, 257, 110 P. 913, 915 (1910)("tipo" held generic Italian word for a chianti wine). A word may also be generic by virtue of its association with a particular region, cultural movement, or legend. See HOLLAND V. C. & A. IMPORT CORP., 8 F.SUPP. 259, 260 (S.D.N.Y.1934)[3] ("Est Est Est" held generic for wine from Italy's Montefiascone region); In re Ricci-Italian Silversmiths, Inc., 16 U.S.P.Q.2d 1727, 1729 (T.T.A.B.1990) ("art deco" held generic for flatware made in design style introduced at L'Exposition Internationale des Arts Decoratifs et Industriels Modernes in Paris); In re Bauhaus Designs Canada Ltd., 12 U.S.P.Q.2d 2001, 2003 (T.T.A.B.1989) ("bauhaus" held generic for style of furniture developed at Germany's Bauhaus school of design); see also Restatement (Third) of Unfair Competition, § 15 cmt. a.
 
 
 18
 The defendant contended in the district court that the word "otokoyama" falls within the generic category. It claimed that in Japanese, otokoyama has long been understood as designating a variety of "dry, manly sake" that originated more than 300 years ago. See Otokoyama, 985 F.Supp. at 374, 376. The district court, however, declined to accord any significance to the Japanese meaning of the word. The court stated that the Japanese meaning of otokoyama is "irrelevant to the U.S. PTO's determination of [plaintiff's] trademark rights.... [T]he meaning of the term 'otokoyama' in Japan is not relevant to this action." Id. at 375-76.
 
 
 19
 For the reasons explained above, this was error. If otokoyama in Japanese signifies a type of sake, and one United States merchant were given the exclusive right to use that word to designate its brand of sake, competing merchants would be prevented from calling their product by the word which designates that product in Japanese. Any Japanese-speaking customers and others who are familiar with the Japanese terminology would be misled to believe that there is only one brand of otokoyama available in the United States. See Restatement (Third) of Unfair Competition, § 15 cmt. a ("Competitors denied access to a [generic] term that denominates goods or services to prospective purchasers would be at a distinct disadvantage in communicating information regarding the nature or characteristics of their product. Consumers would be forced either to spend additional time and money investigating the characteristics of competing goods or to pay a premium price to the seller with trademark rights in the accepted generic term.").
 
 
 20
 The meaning of otokoyama in Japanese, and particularly whether it designates sake, or a type or category of sake, was therefore highly relevant to whether plaintiff may assert the exclusive right to use that word as a mark applied to sake. Defendant should have been allowed to introduce evidence of otokoyama's meaning and usage in Japan to support its claim that the mark is generic and therefore ineligible for protection as a trademark. In light of this error, the district court's finding that plaintiff is likely to succeed on the merits cannot be sustained.
 
 II.
 
 21
 Defendant also challenges the district court's exclusion of the ruling of the Japanese Patent Office denying plaintiff trademark rights in Japan. The district court, citing Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir.1956), ruled that the JPO decision was irrelevant. See Otokoyama, 985 F.Supp. at 375. We disagree.
 
 
 22
 We disagree first with the district court's understanding of the precedent it cited. It is true that a claimant's rights (or lack of rights) to a trademark in the United States cannot be established by the fact that the claimant was found by a foreign court to have (or not to have) rights over the same mark in a foreign country. That is what the Vanity Fair opinion meant by its broad statement to the effect that "the decisions of foreign courts concerning the respective trade-mark rights of the parties are irrelevant and inadmissible." Id. at 639. It does not follow, however, that foreign court decisions are never relevant or admissible for any purpose in a U.S. trademark dispute. Indeed, as authority for the quoted proposition, the Vanity Fair opinion cited our ruling in George W. Luft Co. v. Zande Cosmetic Co., 142 F.2d 536, 539 (2d Cir.1944), which ruled that foreign decisions were relevant and admissible. In Luft, the defendant offered various foreign registrations of the disputed mark to prove that the defendants might lawfully use the mark within the foreign country that granted the registration. The district court had excluded them in reliance on City of Carlsbad v. Kutnow, 68 F. 794 (S.D.N.Y.), aff'd, 71 F. 167 (2d Cir.1895). The Luft Court pointed out that in Carlsbad, "the purpose of introducing the English registration was to prove that the defendants were privileged to use [the mark] on sales in the United States. On this issue a foreign trade-mark was rightly held irrelevant, for clearly the English law could not confer [a trademark right] which our courts were bound to recognize." 142 F.2d at 539 (emphasis added). The opinion goes on, however, to say "We do not think that the Carlsbad case controls the case at bar." Id. Because "the purpose of offering the foreign registrations was not to establish the privilege of using the [mark] in the United States but to prove that the defendants might lawfully use it within the foreign country which granted the registration," id., the court found that the foreign decisions were relevant and admissible and the district court had erred in failing to consider them.
 
 
 23
 Whether a foreign decision is relevant in a trademark case in our courts depends on the purpose for which it is offered. The fact that a litigant has been awarded or denied rights over a mark in a foreign country ordinarily does not determine its entitlement to the mark in the United States. The foreign court decision is not admissible if that is the purpose of the offer. But if, as in Luft, the foreign decision is competent evidence of a relevant fact, it is relevant and admissible to prove that fact.
 
 
 24
 Defendant offered the decision of the JPO for two purposes. First, it was offered to prove the fact assertedly found by the JPO that the word otokoyama in Japanese refers to a type or class of sake. Second, it was offered as evidence supporting defendant's claim that plaintiff committed fraud on the trademark office in the prosecution of its application for registration. See Orient Express Trading Co., Ltd. v. Federated Dep't Stores, Inc., 842 F.2d 650, 653 (2d Cir.1988); Bart Schwartz Int'l Textiles, Ltd. v. F.T.C., 48 C.C.P.A. 933, 289 F.2d 665, 669-70 (C.C.P.A.1961). The theory of this offer was to show plaintiff's awareness that the word otokoyama was not an "arbitrary, fanciful term ... [that] cannot be translated," as plaintiff represented to the trademark examiner. Both purposes are relevant to defendant's claims. It was error to exclude the JPO decision on grounds of relevance.
 
 
 25
 * * *
 
 
 26
 Our reversal of the preliminary injunction awarded to plaintiff should not be construed as an indication that defendant should necessarily prevail on the merits. The question whether otokayama is a generic term for sake or a type of sake in the Japanese language will turn on the strength of the evidence defendant presents at trial once given the opportunity. The evidence defendant sought unsuccessfully to introduce at the preliminary injunction hearing was sufficient to undermine plaintiff's likelihood of success on the merits, but was not necessarily sufficient to carry the defendant's burden of proving that otokoyama is generic.[4] Whether otokoyama is generic in Japanese as defendant contends remains to be seen based on the evidence that will be presented at trial. We hold only that the improperly excluded evidence casts sufficient doubt on the validity of plaintiff's trademark, and on plaintiff's likelihood of success, to require that we vacate the preliminary injunction.
 
 CONCLUSION
 
 27
 The preliminary injunction in plaintiff's favor is hereby vacated. The case is remanded for trial.
 
 
 
 [1]
 The parties have advanced a variety of translations of the JPO's decision. Defendant's exhibits include three translations:
 1) "It is self-explanatory that Japanese (kanji) letters comprising [otokoyama] have been treated as long years' customary written symbol of goods=SEISYU (Japanese equivalent to refined sake (liquor))."; and
 2) "[I]t is clear that the characters forming the word Otokoyama have a long history of customary use in the industry for products designated as seishu ['refined liquor']."; and
 3) "It is obvious that the character 'Otokoyama' is a trademark which has been used commonly by traders in this industry for 'sake' products from old times."
 Plaintiff claimed that the correct translation is as follows: "It is clear that the characters of 'Otokoyama' is a trademark/brand which has been commonly used in this industry for the product 'seishu' from olden times."
 
 
 [2]
 Katakana, Hiragana, and Kanji are apparently three different writing systems in the Japanese language
 
 
 [3]
 The district court concluded, erroneously, that the Holland decision was superseded by the 1984 Amendments to the Lanham Act. See Otokoyama, 985 F.Supp. at 376 n. 5 (citing V & V Food Prods., Inc. v. Cacique Cheese Co., 683 F.Supp. 662, 670 n. 5 (N.D.Ill.1988)). The 1984 Amendments clarified the test to determine whether a registered mark has "become generic" in the minds of consumers, even though it was once distinctive. See Trademark Clarification Act of 1984, Pub.L. No. 98-620 §§ 101-104, 99 Stat. 3335, codified at 15 U.S.C. § 1064(3). The Amendments were designed to overturn the "purchaser motivation" test of Anti-Monopoly, Inc. v. General Mills, 684 F.2d 1326 (9th Cir.1982), but left other trademark law intact. See Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 640-41 (Fed.Cir.1991). Since Holland, like this case, concerned a mark alleged to be a generic "foreign equivalent" at the time it was registered, the changes wrought by the Amendments do not apply, and Holland remains good law
 
 
 [4]
 Defendant's evidence included the following: It cited the 1966 JPO decision denying plaintiff permission to register otokoyama as a trademark. It submitted an affidavit from its own president, an importer of Japanese sake since 1973, asserting that otokoyama signifies "a type of dry sake" in Japan. It offered entries from two sake "encyclopedias" and a suppliers list of Japanese brewers showing that a number of brewers of sake use the word otokoyama. Finally, it offered plaintiff's promotional pamphlet and website advertising, which refer to otokoyama's Edo-age origins and representation on sake barrels from the period. It offered neither Japanese dictionary definitions nor testimony of independent experts in the Japanese liquor industry on the meaning of otokoyama