345 F.3d 121
 Thomas PUGH, Jr., Edward Hamil and Clay Chatin, Plaintiffs-Appellants,
Errol Ennis, Plaintiff,
v.
Glenn S. GOORD, Commissioner of D.O.C.S., William Mazzuca, Supt. F.C.F., Ada Perez, Dupt. of Program F.C.F., Lewis Goidel, Grievance Supervisor, Thomas Eagen, Grievance Director, Warith Deen Umar, Administrative Chaplain, Defendants-Appellees.
 Docket No. 02-0030.
 United States Court of Appeals, Second Circuit.
 Argued: July 14, 2003.
 Decided: September 24, 2003.
 
 J. ANDREW KENT, New York, NY, for Plaintiffs-Appellants.
 SACHIN S. PANDYA, Assistant Solicitor General for Eliot Spitzer, Attorney General of New York, (Michael S. Belohlavek, Deputy Solicitor General, on the brief), New York, NY, for Defendants-Appellees.
 Richard S. Mezan, for Foundation for the Defense of Democracies, Amicus Curiae.
 Before: VAN GRAAFEILAND, CALABRESI, WESLEY, Circuit Judges.
 RICHARD C. WESLEY, Circuit Judge.
 
 
 1
 Appellants Thomas Pugh, Edward Hamil and Clay Chatin, acting pro se, brought this civil rights action (42 U.S.C. § 1983) against several senior administrators of the New York State Department of Correctional Services ("DOCS") and Fishkill Correctional Facility ("Fishkill"). Appellants are incarcerated Shiite Muslims. They contend, among other things, that DOCS has refused to allow them to hold their own congregate prayer services separate from Sunni Muslim inmates in violation of their constitutional and federal statutory rights. Early on in the litigation, appellants moved for a preliminary injunction to prevent DOCS from implementing a state-wide Protocol that provided for a single Muslim prayer service. After a hearing on the motion, the district court denied the preliminary injunction and, without notice to either side, sua sponte dismissed appellants' claims. We conclude the district court erred by failing to provide appellants adequate notice of its intention to dismiss the action. Thus, the district court's order should be vacated and the case remanded for further proceedings.
 
 
 2
 The factual and procedural background of this case is carefully detailed in the decision of the district court. See Pugh v. Goord, 184 F.Supp.2d 326 (S.D.N.Y. 2002) (Pugh I). In essence, appellants contend that DOCS's religious program for Muslims impermissibly impairs their ability to practice the Shiite faith. They contend the Muslim program at Fishkill is dominated by Sunni Muslims and a Sunni Iman. They further assert that certain Sunni worship practices directly contradict their religious tenets and the Iman has been openly hostile to the Shiite inmate population. Id. at 329-30. Juxtaposed to appellants' contentions is a detailed program instituted by DOCS prior to this dispute that attempts to focus on and accommodate elements common to all sects of Islam: "(1) Jum'ah (Friday noon services); (2) Islamic studies classes; (3) Islamic introduction services; and (4) Majlis Shu'urah (consultation and religious planning)." Id. at 328. Additional dietary and spiritual accommodations are also provided as well as a grievance procedure for individual complaints against Muslim prison chaplains. See id. at 328-29.
 
 
 3
 Appellants were not the only inmates to seek redress before the courts with regard to the Fishkill Iman and Sunni/Shiite difficulties. As the district court aptly noted, similar complaints were successfully litigated in New York state court. Id. at 330 (discussing Cancel v. Goord, 278 A.D.2d 321, 717 N.Y.S.2d 610 (2d Dep't.2000), leave to appeal denied, 96 N.Y.2d 707, 725 N.Y.S.2d 638, 749 N.E.2d 207 (2001)). In response to the state court's directives in Cancel, DOCS augmented the program with a state-wide Protocol in August 2001 to increase Shiite inmate access to DOCS's sanctioned religious services and classes and to ensure that Shiite inmates would not be harassed or subjected to discrimination in the practice of their faith.[1] Id. In the district court's view, "DOCS undertook a sincere, thoughtful and effective effort to reconcile the religious needs of the [Shiite] prisoner population with the security and penological interests of the State." Id. at 331.
 
 
 4
 Shortly after DOCS issued its Protocol — 7 days to be exact — appellants moved for a preliminary injunction challenging the Protocol and, once again, asserted their immediate right to a separate religious program. On October 5, 2001, the court held a conference on the motion. Appellants again asked for a separate prayer area and chaplain. In response, defendants submitted the affidavit of John LoConte, then-Director of Ministerial and Family Services for DOCS. LoConte explained that DOCS provides prisoners with religious opportunities and generally alleged there would be administrative, spacial and security burdens if DOCS were required to accommodate all denominational differences.
 
 
 5
 In January 2002, the district court issued an order denying appellants' preliminary injunction motion. See Pugh I, 184 F.Supp.2d at 337. The court reasoned that appellants did not dispute "that the four-point program for Muslim inmates is facially non-sectarian, and permits practice of those aspects of Islam that are common to both the Shiite and Sunni faiths. Prisoners are permitted to pray five times daily, to participate in religious consultation and instruction, to take part in communal Jum'ah services and to possess and use religious symbols such as prayer rugs and prayer beads." Id. at 333. The court characterized appellants as asserting that "regardless of whether the DOCS Muslim program passes constitutional muster on its face, the program as administered under the Sunni chaplain at Fishkill significantly infringes upon their ability to worship freely." Id. at 334.
 
 
 6
 The court then applied the four-factor inquiry set forth in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and concluded the "Constitution does not require more than is provided by DOCS's Muslim program, as modified by the new [Shiite] Protocol and that [appellants] accordingly cannot succeed on the merits of their claims." Id. at 333. Having denied the preliminary injunction, the district court then sua sponte dismissed appellants' complaint indicating that further discovery would not aid in resolution of the matter. The court took note that appellants "do not dispute that all Islamic sects share certain central religious practices, and that these shared religious practices are accommodated under the DOCS program.... The only dispute remaining is purely a legal one concerning whether the measures actually taken by the defendants are constitutionally sufficient." Id. at 337.
 
 
 7
 In March 2002, appellants, now represented by counsel, moved pursuant to Federal Rule of Civil Procedure 60(b) to vacate the judgment. The court denied the motion noting its previous decision "turned not on whether [Shiite] doctrine permits Sunni and [Shiite] Muslims to worship together, but on the reasonableness of the justifications set forth by DOCS for refusing to provide separate opportunities for congregate worship." Pugh v. Goord, No. 00-7279 (S.D.N.Y.2002) (Pugh II). The court also refused to recognize a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") noting that appellants had not raised the statute prior to filing the Rule 60 motion.
 
 Appellants appeal from both orders.[2]
 
 Analysis
 
 
 8
 District courts have the power to enter summary judgment sua sponte only if "the losing party was on notice that [it] had to come forward with all of [its] evidence." First Financial Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 114 (2d Cir.1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A sua sponte award of summary judgment may well be appropriate if it is clear that all of the evidentiary material a party might submit is before the court and no material issue of fact exists. Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir.1996). But even that is cast into doubt by First Financial, which suggests that, where no party has moved for summary judgment and no notice was given by the court, a sua sponte grant of summary judgment is never appropriate. See First Financial, 193 F.3d at 115. In addition, this Court has regularly noted that "the failure to provide [a] pro se party with notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure, and the consequences of noncompliance therewith, will result in vacatur of the summary judgment, no matter how meritorious, unless the movant shows (or it is obvious to the court) that the pro se was aware of this rule's requirements." Irby v. New York City Trans. Auth., 262 F.3d 412 (2d Cir.2001) (emphasis added); see also McPherson v. Coombe, 174 F.3d 276, 282 (2d Cir.1999). There was no such showing here.
 
 
 9
 The inmates' motion and their supporting papers for a preliminary injunction did not require the district court to determine the matter as if it were confronted with an application for summary judgment under Rule 56. "[P]reliminary injunction motion papers should not be treated as if they were a response to a motion for summary judgment," because parties are not required to present everything they have when moving for a preliminary injunction. Hispanics for Fair & Equitable Reapportionment v. Griffin, 958 F.2d 24, 26 (2d Cir.1992). Appellants were required to establish the likelihood of success on the merits, see, e.g., Otokoyama Co. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir.1999), but the "[l]oss of a motion for preliminary injunction means only temporary lethality." Griffin, 958 F.2d at 26. While appellants may have been appropriately denied injunctive relief, that did not require the court to resolve the entire matter.
 
 
 10
 DOCS urges us to affirm the district court's dismissal; it agrees with the district court that further discovery would not have resulted in establishing issues of material fact. See Fed.R.Civ.P. 56(f). In effect, DOCS maintains appellants were not prejudiced by the lack of notice. It is hard to assess this contention until it is measured against appellants' response to a summary judgment application from DOCS or on the court's initiative. The district court specifically noted appellants had made a "sufficient allegation" that absence of an opportunity for separate Shiite worship services "infringed on plaintiffs' ability to practice their religion." Pugh II; see also Pugh I, 184 F.Supp.2d at 332-35. Nevertheless, the court determined as a matter of law that DOCS's justification for denying separate religious opportunities was reasonable. It did so by relying on an affidavit from Director LoConte that, at best, contained generalized assertions about the institutional impact of separate Shiite services. It may be that the Protocol is a reasonable penological accommodation of Shiite needs; however, appellants should first be put on notice that they must come forward to identify a genuine issue of fact in that regard, or their case will be at an end. In our view, they are entitled to that.
 
 
 11
 The district court also refused to analyze appellants' claim based on the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, et seq. That statute was raised in an exhibit attached to the amended complaint, and was explicitly claimed as a basis of relief for the first time on the 60(b) motion. Since the summary judgment order is now vacated, we need not decide if that refusal was appropriate. We note only that had notice been given by the court that summary judgment was being considered, there is at least the possibility plaintiffs would have sought to amend their complaint to raise more squarely the RLUIPA question. In any event, on remand, appellants will have an opportunity to move to amend their complaint if they so choose. See Fed.R.Civ.P. 15.
 
 
 12
 By holding that the district court failed to uphold the procedural safeguards necessary in this case, we do not of course address the merits of appellants' claims.[3] The district court's order should be vacated and the case remanded.
 
 
 13
 Editor's Note: The opinion of the United States Court of Appeals, Second Circuit, in Berry v. Kerik, published in the advance sheet at this citation, 345 F.3d 126, was withdrawn from the bound volume at the request of the court.
 
 
 
 Notes:
 
 
 [1]
 The trial court inCancel annulled a DOCS's grievance proceeding determination in which the inmate pro se plaintiff sought separate Shiite worship services. The Court ordered that Shiite Muslims have contact with a Shiite scholar registered with DOCS pursuant to designated DOCS guidelines, or if none was available, that Shiite Muslim inmates be allowed to participate in a religious class once a week with an approved inmate facilitator. Cancel v. Goord, 181 Misc.2d 363, 365, 695 N.Y.S.2d 267 (A.D.2d 1999). The Appellate Division struck the last two directives and remitted the matter to Supreme Court "to conduct appropriate proceedings to determine the manner in which to permit the petitioner and his fellow [Shiite] Muslims to practice their faith, apart from Sunni Muslim prisoners, consistent with all pertinent regulations governing the proper and safe administration of a correctional facility." Cancel, 278 A.D.2d at 321, 717 N.Y.S.2d 610.
 
 
 [2]
 DOCS argues that only Pugh has properly appealed from the district court's decision and order of December 28, 2001, because the notice of appeal was titled "THOMAS PUGH, JR., et al." Federal Rule of Appellate Procedure 3(c)(4) clearly states that "an appeal must not be dismissed for informality of form or title of the notice of appeal orfor failure to name a party whose intent to appeal is otherwise clear from the notice." (emphasis added). Although the other appellants were not in the caption, all of their names appeared in the notice; it is "objectively clear" that all desired to appeal.
 
 
 [3]
 We note that the district court treated appellants' First Amendment claims and Equal Protection claims as being identical. Because we decide the case on the failure to give notice, we express no view on the issue. In the interest of judicial economy, however, we deem it wise to mention that while, on some set of facts — perhaps the ones the district court had before it when it issued summary judgment — the two claims may be identical, it does not necessarily follow that they are the same on other conceivable facts