**BLUE & WHITE FOOD PRODUCTS CORP., Plaintiff,**

v.

**SHAMIR FOOD INDUSTRIES, LTD., Defendant.**

No. 04 CIV. 8414VM.

United States District Court, S.D. New York.

Dec. 22, 2004.

Edward A. Meilman, Dickstein, Shapiro, Morin & Oshinsky LLP (NY), New York, NY, for Plaintiff.

Richard Brian Verner, Sullivan & Worcester LLP, New York, NY, for Claimant.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Blue & White Food Products Corp. (hereinafter, "Blue & White") moved this Court for a preliminary injunction on October 26, 2004, prohibiting Defendant Shamir Food Industries, Ltd. (hereinafter, "Shamir Food") from engaging in conduct that allegedly infringes Blue & White's Registered Trademark No. 2,266,461, which registers the phrase "Shamir Salads" for use with vegetable salads, or its asserted common-law trademark rights to the word "Shamir," in violation of the Lan-

ham Act, 15 U.S.C. §§ 1114 & 1125(a).[1] Shamir Food, an Israeli corporation, manufactures vegetable salads in Israel under the brand name "Shamir," and was attempting to market those products at an international kosher food festival taking place in New York called "Kosherfest" on October 26 and 27.

By Order dated October 26, 2004, after hearing from the parties on an expedited basis, the Court issued a preliminary injunction. The Order prohibited Shamir Food, during the pendency of this action, or until subsequent order of the Court, from advertising, marketing, distributing, offering for sale or selling, within the territorial jurisdiction of the United States, any vegetable salad products which incorporate Blue & White's asserted trademarks in the terms "Shamir" or "Shamir Salads". That Order indicated that the Court's findings, reasoning, and conclusions would be set forth in a subsequent Decision and Order. This Decision and Amended Order is intended to provide that explanation, and to clarify the scope of the injunction.

## I. BACKGROUND

Blue & White, a New York corporation, manufactures kosher food products under a variety of brands, including the popular "Sabra Salads" brand name. It has also allegedly sold a variety of kosher food products, including a line of vegetable dips and spreads and a line of herring products, under the "Shamir Salads" trademark since 1989. On August 3, 1999, based in part on Blue & White's representation that the "Shamir Salads" mark had been used in commerce since 1989, the United States

---

1. Blue & White's Complaint also asserts claims of common law trademark infringement, trade dress infringement, unfair competition, and false designation of origin under the Lanham Act. These claims, with the ex- ception of Blue & White's claim of infringement of its alleged common law rights to the word "Shamir," do not serve as the basis for the instant motion.

Patent and Trademark Office ("PTO") granted Blue & White Trademark Registration No. 2,266,461. This registered trademark protects the phrase "Shamir Salads" as used in connection with vegetable salads, disclaims any protection for the word "Salads" separate and apart from the mark as shown, and notes that the English translation of the Hebrew word "shamir" is "dill".

According to documents submitted in support of Blue & White's motion, Shamir Food first attempted to sell vegetable dips and spreads in the United States in 2003. After Blue & White sued Shamir Food and several of its distributors for infringement, Shamir Food's export manager promised Blue & White in August, 2003 that it would cease trying to import its "Shamir"-branded vegetable dips and spreads into the United States. (*See* Declaration of Yehuda Pearl ("Pearl Decl.") ¶ 4, attached to Blue and White's Memorandum of Law in Support of its Application for a Temporary Restraining Order and Motion for a Preliminary Injunction, dated October 25, 2004 ("Pf. Mem. of Law").) In or around December 2003, Blue & White initiated what it calls a "label redesign," and admits in connection with this proceeding that it has not used the "Shamir Salads" trademark on vegetable salad products since that date, though it has continuously used the trademark on herring products. (*See* Pearl Decl. ¶¶ 2–3.)

The parties' alleged agreement broke down earlier this year. In August of this year, Shamir Food initiated cancellation proceedings with the PTO challenging Blue & White's registered trademark and filed an application with the PTO for trademark registration for its own use of the word "Shamir" as a brand name for vegetable salads. In mid-October, Blue & White allegedly discovered that Shamir Food was intending to display and market its "Shamir"-branded vegetable salad products (*i.e.,* its vegetable dips and spreads) at Kosherfest, which is held for two days each year at the Jacob K. Javits Convention Center in Manhattan, New York. Both Blue & White and Shamir Food agree that Kosherfest is an extremely important event for the international kosher food industry. According to the trade fair's website, a portion of which was submitted in support of Blue & White's motion, Kosherfest is the world's largest kosher trade show. *See* Kosherfest, *Visitor Info.,* http://www.kosherfest.com/visinfo.asp (last visited Dec. 15, 2004). Kosherfest's promotional materials also indicate that at the Kosherfest held in 2003, 91 percent of buyers find new products or companies at the trade fair, and 78 percent of buyers planned to make purchases as a result of attending the fair. *See* Kosherfest, *Home,* http://www.kosherfest.com/index.asp (last visited Dec. 15, 2004), Pearl Decl. Ex. D.

Despite efforts to dissuade Shamir Food from marketing its products at Kosherfest, Blue & White confirmed on October 25 that Shamir Food was preparing and stocking its booth at the Javits Center, whereupon Blue & White prepared and filed the underlying suit and the instant motion for a temporary restraining order ("TRO"), a preliminary injunction, expedited discovery, and a protective order to protect its asserted intellectual property rights. After Blue & White provided notice of the motion to Shamir Food, the Court held an expedited contested hearing that day on Blue & White's motions, at which Shamir Food presented arguments against granting the motions.

## II. *DISCUSSION*

### A. *BURDEN OF PROOF*

To obtain a preliminary injunction, Blue & White must "establish irreparable

harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002).

■ Blue & White is entitled to a preliminary injunction if it can demonstrate that there is a likelihood of confusion between its protected mark and Shamir Food's. In order to prevail on its trademark infringement claim, a plaintiff "must show that the defendant (1) without permission, copied, reproduced, or imitated the plaintiff's (2) registered trademark in commerce (3) as part of the sale or distribution of goods or services (4) and that such use is likely to cause confusion between the two marks." *Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 742–743 (2d Cir.1998) (citing 15 U.S.C. § 1114(1)(a)). Shamir Food's threatened and actual use of the "Shamir" mark, which is a close imitation of Blue & White's "Shamir Salads" mark, for its vegetable salad products at the Kosherfest trade show, establishes the competing mark's use in commerce as part of the sale of goods. Shamir Food used the "Shamir" mark to describe products identical in nature to Blue & White's without Blue & White's permission. Furthermore, "[i]n Lanham Act cases such as this one, where the plaintiff has a protected mark, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'" *New Kayak Pool Corp. v. R & P Pools, Inc.,* 246 F.3d 183, 185 (2d Cir.2001) (quoting *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73 (2d Cir.1988)). Thus, if Blue & White sufficiently demonstrates that it has a protected mark, and a likelihood of confusion between its mark and Shamir Food's competing mark, it will be entitled to a preliminary injunction.

## B. *BLUE & WHITE'S PROOF THAT ITS MARK IS PROTECTED*

■ The Court concludes that Blue & White can sufficiently demonstrate that it remains entitled to protection for its "Shamir Salads" trademark. Blue & White's certificate of registration for the "Shamir Salads" mark "is prima facie evidence that the mark is registered and valid (*i.e.,* protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Management, Inc. v. Lane Capital Management, Inc.,* 192 F.3d 337, 345 (2d Cir.1999) (citing 15 U.S.C. § 1115(a)). Since Blue & White has obtained trademark registration for the phrase "Shamir Salads," Shamir Food bears the burden of demonstrating that the trademarked phrase is not entitled to protection. *Id.*

Shamir Food has attempted to challenge the validity of the mark in two ways. First, it argues that because Blue & White has not used the mark since the end of 2003, it has abandoned the mark, and is no longer entitled to protection for it. Second, it claims that Blue & White's mark is not entitled to protection under the Lanham Act because it is not sufficiently distinctive. Based on the evidence currently before the Court, neither of these arguments has merit.

### 1. *Abandonment*

■ There is no evidence suggesting that Blue & White has manifested any intent to abandon its "Shamir Salads" trademark. At oral argument, Shamir Food attempted to assert the affirmative defense of abandonment and thereby argue that Blue & White's trademark rights are no longer enforceable. (*See* Transcript of Hearing on October 26, 2004 ("Tr.") at 4–6.) But in order to establish abandon-

ment, Shamir Food must "show either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir.2000). Under the Lanham Act, "[n]onuse for two consecutive years shall be prima facie abandonment." 15 U.S.C. § 1127.

In the instant case, Blue & White admitted that it has not actively used the mark for salad products since the end of 2003, but insists that it plans to redeploy the mark in the near future after the completion of its alleged label redesign. Blue & White's nonuse of its mark on vegetable salad products has not approached the two years necessary to establish prima facie abandonment under the Lanham Act. In addition, as Shamir Food acknowledges, Blue & White has continued to use the mark on herring products in 2004. Furthermore, no evidence before the Court suggests that Blue & White has manifested any unequivocal intent to abandon the mark. In fact, the opposite is suggested by Blue & White's willingness to invest in legal proceedings and other efforts to protect the mark from infringement. There is thus no support for Shamir Food's argument that Blue & White abandoned its trademark.

## 2. *Blue & White's Right to Protection for its Mark*

Shamir Food also maintained at oral argument that the phrase "Shamir Salads" was not entitled to trademark protection on the grounds that the mark is not sufficiently distinctive to warrant trademark protection. (*See* Tr. at 7.) Blue & White's trademark registration indicates that it has explicitly disclaimed any exclusive

right to use the word "Salads" apart from the mark as shown. Shamir Food goes further by arguing that the word "Shamir" is a generic word, meaning "dill" in Hebrew, and a common surname in Israel, and thus cannot be trademarked.[2] (*See id.*)

Based on evidence currently before the Court, this argument mischaracterizes the distinctiveness of Blue & White's trademark. Courts generally measure the distinctiveness of a mark by placing it into one of four traditional categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *See TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir.2001) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir. 1976)); *see also BigStar Entertainment, Inc. v. Next Big Star*, 105 F.Supp.2d 185, 192–98 (S.D.N.Y.2000). Generic terms may not be registered as trademarks. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). A generic term is one that refers to the category to which the product belongs. *See Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.1999); *Abercrombie & Fitch*, 537 F.2d at 9. Everyone is entitled to use generic terms to designate what types of products are being traded.

The doctrine of foreign equivalents extends this principle to languages other than English. *See Otokoyama*, 175 F.3d at 270 ("This extension rests on the assumption that there are (or someday will be) customers in the United States who speak that foreign language."). This doctrine ensures that a trader will not be able to acquire an exclusive right to terms that would prevent other traders from accu-

---

**2.** This argument would appear to undermine Shamir Food's recently-filed trademark application for the word "Shamir," which is not before the Court.

rately describing their products in any language.

The doctrine of foreign equivalents is not likely to bar Blue & White from obtaining protection for its "Shamir Salads" mark, however. If Blue & White were asserting the right to designate salads containing dill as "dill salads," using any combination of Hebrew and English words, Shamir Food's argument might have merit. *See Otokoyama*, 175 F.3d at 271–72 (concluding that if the Japanese word "otokoyama" described a generic type of sake, it could not be trademarked in order to prevent other sake vendors from using the term to describe sake of that type). But in this case, the phrase "Shamir Salads" is used by Blue & White to designate a large category of vegetable salads, dips, spreads, and herring products. Some of those products may contain the herb dill, but not all do, and none are called "dill salads" or would fit within a hypothetical "dill salads" product category. The trademarked phrase is thus not generic in English, Hebrew, or a combination of the two under the doctrine of foreign equivalents.

Rather, based on current evidence, the phrase appears to be suggestive and thus entitled to trademark protection. The Second Circuit has described a suggestive mark as one that "employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use imagination, thought and perception to reach a conclusion as to the nature of the goods." *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993). In the instant case, "Shamir Salads" is not a necessary term of description for either party's product line. Many of the products sold by Blue & White under the "Shamir Salads" mark do not contain dill or fit neatly within the definition of the word "salad." For example, Blue & White's hummus product, a spread containing pureed chickpeas, garlic, oil, and other ingredients, has apparently been sold by Blue & White under the "Shamir Salads" mark, contains no dill and may only loosely be called a "salad." The mark does not describe the features of the hummus product, instead requiring the purchaser "to use imagination, thought and perception to reach a conclusion" as to its nature. *Id.* While the Court cannot conclude on the present record that the "Shamir Salads" mark is arbitrary or fanciful, as Blue & White argues in its brief, the suggestive nature of the mark as applied to the goods with which it is associated renders it worthy of trademark protection.

## C. *INFRINGEMENT BASED ON LIKELIHOOD OF CONFUSION*

Next, the Court concludes that Blue & White has demonstrated that Shamir Food's use of the word "Shamir" to describe its products creates a likelihood of confusion between Shamir Food's products and its own. The Court finds that if competing users of "Shamir" and "Shamir Salads" marks were allowed to sell comparable vegetable salads in the same product market United States, "an appreciable number of consumers are likely to be misled or confused about the source of the product in question." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993).

The Second Circuit has directed district courts to apply the following eight nonexclusive factors, known as the *Polaroid* factors, when considering the likelihood of confusion between competing marks:

(1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5)

actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers.

*Streetwise Maps,* 159 F.3d at 743 (citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961)); *New Kayak Pool Corp. v. R & P Pools, Inc.,* 246 F.3d 183, 185 (2d Cir.2001) (concluding that a district court's failure to apply the *Polaroid* factors amounted to an abuse of discretion).

■■■ The first four *Polaroid* factors and the sixth factor significantly favor Blue & White. According to the record before the Court, Blue & White's "Shamir Salads" mark has been in use in the United States since at least 1989, and has been used to describe a wide range of dips, spreads, and other products since that time. The mark's widespread use, and the registration Blue & White has obtained for it, indicate that the mark is strong. Shamir Food's mark is clearly very similar to Blue & White's, as they both emphasize the word "Shamir" as applied to vegetable salads.[3] There would be close proximity in the marketplace because both product lines include vegetable salads sold in the kosher food industry, and Shamir Food is attempting to enter a geographic sector of that market in which Blue & White is already active. The fourth factor favors Blue & White because if Shamir Food were permitted to bring its own "Shamir" products into the market, there would be no gap to bridge. Shamir Food is attempting to bring products into the United States that are substantially the same as those Blue & White already trades in this market.

Although more factfinding is necessary on the sixth *Polaroid* factor, Shamir Food's bad faith seems apparent insofar as it had allegedly already agreed to desist from importing its "Shamir"-branded products into the United States after Blue & White initiated a trademark infringement suit in 2003 when it attempted to engage in this latest attempt to market those same products in this country. Furthermore, Shamir Food's actions in attempting to market competing products under the "Shamir" mark at a brief annual trade fair before resolving the trademark cancellation and registration proceedings it initiated at the Trademark Trial and Appeal Board and PTO, respectively, indicates that it is unwilling to follow proper procedures to establish its right to trade "Shamir" branded vegetable salad products in the United States.

The fifth, seventh, and eighth factors are less clear, neutral, or may not favor Blue & White, but the *Polaroid* analysis as a whole persuades the Court that there is a significant likelihood of confusion between Blue & White's and Shamir Food's products. The Court has not been presented with evidence of actual confusion and cannot attest to the quality of Shamir Food's product at this stage of the proceedings. Thus, the fifth and seventh *Polaroid* factors are neutral. The eighth *Polaroid* factor also appears neutral, because the relevant consumers at the October Kosherfest likely were, for the most part, sophisticated members of the food service industries. However, the products, if purchased for distribution in the United States, would have been sold to a less sophisticated market of grocery product consumers. Thus, Blue & White may succeed in demonstrating that the ultimate intended consumer of

**3.** The Fourth Circuit has held that "it is a settled principle of trademark law that the dominant part of a mark may be given extra weight on the issue of likelihood of confusion." *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1530 (4th Cir.1984).

its and Shamir Food's competing products is less sophisticated and therefore, more likely to be confused between its products and Shamir Food's. Even if these three elements of the *Polaroid* test are neutral, however, the Court finds that their significance is far outweighed by the strength of the five other factors that clearly favor Blue & White at this stage of the proceedings.

Because Blue & White has sufficiently demonstrated that its registered "Shamir Salads" trademark is valid, and that Shamir Food's use of the "Shamir" mark creates a likelihood of confusion between its products and Shamir Food's, Blue & White is entitled to a preliminary injunction prohibiting Shamir Food from using either the "Shamir Salads" or "Shamir" marks within the territorial jurisdiction of the United States.[4]

### III.  *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated October 26, 2004 is amended to incorporate the discussion and decision set forth above; and it is further

**ORDERED** that, pursuant to Fed. R.Civ.P. 65(a), Defendant Shamir Food Industries, Ltd. is enjoined during the pendency of this action, or until subsequent order of the Court, from advertising, marketing, distributing, offering for sale or selling, within the territorial jurisdiction of the United States, any vegetable salad

products that incorporate the marks "SHAMIR" or "SHAMIR SALADS".

**SO ORDERED.**

---

**4.** Blue & White has also asserted a separate common-law trademark right to the word "Shamir," but has not introduced any evidence suggesting that it has actually used the word in commerce to designate products except as an element of the registered composite term "Shamir Salads." However, given that Blue & White is entitled to a preliminary injunction on the basis of the likelihood of confusion between Shamir Food's "Shamir" mark and Blue & White's "Shamir Salads" mark, the Court does not reach the merits of Blue & White's common law trademark infringement claims at this time.