The HEISMAN TROPHY
TRUST, Plaintiff,

v.

SMACK APPAREL COMPANY,
Defendant.

No. 08 Civ. 9153 (VM).

United States District Court,
S.D. New York.

Jan. 26, 2009.

Howard S. Zelbo, Lawrence B. Friedman, Cleary Gottlieb Steen & Hamilton, LLP, New York, NY, for Plaintiff.

James William Tilly, The Tilly Law Firm, Tulsa, OK, Kelly Douglas Talcott, K & L Gates, LLP, New York, NY, for Defendant.

### DECISION AND AMENDED ORDER

VICTOR MARRERO, District Judge.

Plaintiff The Heisman Trophy Trust ("The Heisman Trust") brought this action alleging that defendant Smack Apparel Company ("Smack Apparel") breached a settlement agreement with The Heisman Trust, and continues to infringe and dilute The Heisman Trust's trademarks. The Heisman Trust requested an order to show cause for a preliminary injunction pursuant to Fed.R.Civ.P. 65 ("Rule 65"), which the Court granted. By Order dated January 9, 2009, after hearing argument from the parties, the Court issued a preliminary injunction. The Order prohibited Smack Apparel, during the pendency of this action or until subsequent order of the Court, from using The Heisman Trust's trademarks or service marks, or any confusingly similar marks, on or in connection with Smack Apparel's goods or services. The Order indicated that the Court's findings, reasoning, and conclusions would be set forth in a subsequent opinion. This Decision and Amended Order is intended to provide that explanation.

1. The following factual summary derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: The Heisman Trust's Amended Verified Complaint, dated November 7, 2008 (the "Amended Complaint"); Memorandum of Law in Support of the Application by Plaintiff The Heisman Trophy Trust by Order to Show Cause for a Preliminary Injunction, dated December 9, 2008; Memorandum of Law in

## I. BACKGROUND [1]

The Heisman Trust is a registered not-for-profit trust charged with supporting public charities, especially those that support and encourage student athletics; providing scholarships; and promoting youth physical fitness in high school and college. The Heisman Trust owns the rights for all intellectual property relating to the Heisman Trophy. These rights were transferred to it by The Downtown Athletic Club of New York City, Inc. (the "Downtown Athletic Club"), the organization that was originally responsible for awarding the Heisman Trophy.

The Heisman Trophy is awarded each year in recognition of an outstanding college football player. The presentation of the award is generally preceded by coverage from national television networks, newspapers, magazines, and radio talk shows, and the award itself is presented on ESPN television network, with millions of viewers watching. The Heisman Trust owns the following federal trademark and service mark registrations relating to the Heisman Trophy (the "Heisman Marks"):

1) HEISMAN MEMORIAL TROPHY, U.S. Trademark Reg. No. 936,853, dated June 27, 1972, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (Amended Complaint, Ex. A at 1);

2) HEISMAN MEMORIAL TROPHY AND DESIGN, U.S. Trademark Reg.

Opposition to Application by Plaintiff The Heisman Trophy Trust by Order to Show Cause for a Preliminary Injunction, dated December 16, 2008; and Reply Memorandum of Law in Support of the Application by Plaintiff The Heisman Trophy Trust by Order to Show Cause for a Preliminary injunction, dated December 23, 2008. Except where specifically quoted, no further reference to these documents will be made.

No. 936,852, dated June 27, 1972, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 2);

3) HEISMAN TROPHY AWARD, U.S. Trademark Reg. No. 1,397,161, dated June 10, 1986, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 3);

4) HEISMAN TROPHY, U.S. Trademark Reg. No. 3,139,387, dated September 5, 2006, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 4);

5) HEISMAN TROPHY, U.S. Trademark Reg. No. 3,477,047, dated July 29, 2008, for "clothing, namely T-shirts and hats" (*id.* at 5);

6) HEISMAN, U.S. Trademark Reg. No. 1,397,160, dated June 10, 1986, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 6);

7) HEISMAN, U.S. Trademark Reg. No. 3,388,826, dated February 26, 2008, for "video games, namely video game software, interactive video game programs, and video game discs" (*id.* at 7);

8) HEISMAN, U.S. Trademark Reg. No. 3,311,769, dated October 16, 2007, for "footballs" (*id.* at 8); and

9) HEISMAN, U.S. Trademark Reg. No. 3,331,298, dated November 6, 2007, for "shirts, sweat shirts, hats, visors and jackets" (Tilly Declaration, dated December 16, 2008 ("Tilly Decl."), Ex. X).

The Heisman Trust alleges that it has also acquired common law trademark rights through its extensive use of its registered and unregistered trademarks. The Heisman Trust spends more than $650,000 each year in advertising and promoting the Heisman Trophy and the Heisman Marks, and it has licensed the use of the Heisman Marks to various third parties in exchange for royalty and other payments.

Smack Apparel is a clothing manufacturer that sells principally to retailers and operates a website through which it also sells its apparel. The Heisman Trust alleges that Smack Apparel first made unlawful use of the Heisman Marks in 1999, when a college football player who was a candidate for the Heisman Trophy that year was arrested for shoplifting. Smack Apparel produced a T-shirt with the word "Heistman" and a depiction of the football player from the Heisman Trophy statuette holding a shopping bag in his hand.

In 2000, Smack Apparel entered into a settlement agreement (the "Settlement Agreement") with the Downtown Athletic Club regarding the 1999 T-shirt. In the Settlement Agreement, Smack Apparel stipulated that it would "cease and permanently refrain from manufacturing, displaying, selling or offering for sale any clothing or other merchandise bearing the [Heisman] Marks, or confusingly similar marks, and from displaying or otherwise using the [Heisman] Marks, or confusingly similar marks, on or in connection with any website." (Declaration of Robert Whalen in Support of The Heisman Trophy Trust's Application for a Preliminary Injunction ("Whalen Decl."), Ex. 11 at 3.) Smack Apparel also agreed that a breach of the Settlement Agreement "would result in continuing material and irreparable harm, and because it would be difficult or impossible to establish the full monetary value of such damage," the holder of the Heisman Marks "shall be entitled to injunctive relief." (*Id.* at 4.)

In the years since the Settlement Agreement, Smack Apparel has occasionally produced T-shirts promoting the candidacies of potential Heisman Trophy winners, including one series of T-shirts in 2002, and another in 2007. In the fall of 2008, Smack Apparel produced thirteen varieties of Heisman Trophy-related T-shirts. The Heisman Trust then filed the underlying suit, alleging breach of contract (referring to the Settlement Agreement), as well as trademark infringement and dilution under the United States Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1125(a) and (c). The Amended Complaint alleges that Smack Apparel's merchandise infringes the Heisman Marks by combining "one or more of the Heisman Marks with references to college athletes who are thought to be in contention to win the Heisman Trophy award." (Amended Complaint ¶ 29.) The Court granted The Heisman Trust's request for an order to show cause for a preliminary injunction, and after the application was fully briefed, the Court heard oral arguments from both parties.

As established by the parties' submissions and at oral argument, the 2008 Smack Apparel T-shirts promoting potential Heisman Trophy winners use a variety of word combinations or letter substitutions to refer to a football player's Heisman Trophy candidacy: substituting the "S" with a "5" to write "HEISMAN" (*see* Amended Complaint, Exs. F, G); substituting the "IS" with a "15" to write "HE15MAN" (*see id.,* Ex. E); and inserting "THE" in smaller font to write "HE. IS.the.MAN" (*see id.,* Exs. H, I, J). The Smack Apparel T-shirts also use a font that is virtually identical to the font used on the T-shirts licensed by The Heisman Trust and on The Heisman Trust's website.

## II. DISCUSSION

### A. *LEGAL STANDARD*

■■■ To obtain a preliminary injunction, The Heisman Trust must make a showing of irreparable harm and either 1) "a likelihood of success on the merits," or 2) "sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002). For actions under the Lanham Act, "where the plaintiff has a protected mark, a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *Blue & White Food Prods. Corp. v. Shamir Food Indus., Ltd.,* 350 F.Supp.2d 514, 518 (S.D.N.Y.2004) (*quoting New Kayak Pool Corp. v. R & P Pools, Inc.,* 246 F.3d 183, 185 (2d Cir.2001)). "To prevail on an infringement claim, a plaintiff must establish that it possesses a valid, legally protectible mark and that defendant's subsequent use of a similar mark is likely to create confusion as to the origin of the product at issue." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir.1999).

For the purposes of a preliminary injunction, The Heisman Trust's breach of contract claim is subject to the same Lanham Act analysis, because The Heisman Trust alleges that Smack Apparel has breached the Settlement Agreement by infringing on and diluting the Heisman Marks. The Court will first address the trademark infringement claim, because that analysis will also resolve the breach of contract claim.

### B. *PROTECTABLE MARKS*

■■■ "To be valid and protectible, a mark must be capable of distinguishing the product it marks from those of others." *Lane Capital,* 192 F.3d at 344. There are five categories used to evaluate a mark's

ability to distinguish: generic, descriptive, suggestive, arbitrary, and fanciful. *Id.* "The categories reflect both the eligibility for protection and the degree of protection accorded." *Id.* Marks that are fanciful, arbitrary, and suggestive are deemed to be inherently distinctive, and so receive automatic protection. Marks that are descriptive require a showing of distinctiveness, i.e., "secondary meaning," before they can be protected. *Id.* Marks that are registered with the Patent and Trademark Office ("PTO") without proof of secondary meaning are presumed to be "more than merely descriptive, and, thus ... inherently distinctive." *Id.* at 345.

The certificates of registration for the Heisman Marks are "prima facie evidence that the mark[s] [are] registered and valid (i.e., protectible), that the registrant owns the mark[s], and that the registrant has the exclusive right to use the mark[s] in commerce." *Id.* The Heisman Trust states in its Amended Complaint that the Heisman Marks have been licensed for use on sports apparel since 1998, and that they were used on merchandise sold by The Downtown Athletic Club as early as the mid–1970s. At least some of the Heisman Marks have therefore become incontestable. *See Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir.1993) ("A registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use . . . ." (*citing* 15 U.S.C. §§ 1065 & 1115(b))).

■ Even if some of the Heisman Marks cannot be characterized as incontestable, their registration creates the presumption that they are inherently distinctive, and thus, protectible. *See Lane Capital*, 192 F.3d at 345. Smack Apparel bears the burden of rebutting by a preponderance of the evidence the presumption that "the purchasing public perceives the mark to be inherently distinctive." *Id.* Smack Apparel's only argument in this area seems to be its claim that the Heisman Marks are not strong in the market involving apparel because the Heisman Marks were not registered in connection with those goods and services until 2007. However, this argument does not rebut the presumption that the purchasing public regards the Heisman Marks as inherently distinctive. That presumption still stands, as it is supported by the evidence in the record before the Court that the purchasing public is aware of the Heisman Marks' association with an annual award given in recognition of excellence in intercollegiate football. The Court finds that the Heisman Marks are protectible and the Court will now turn to the likelihood of confusion analysis required under a claim of trademark infringement.

## C. *LIKELIHOOD OF CONFUSION*

■ The following eight nonexclusive factors are used to determine when a likelihood of confusion exists: 1) the strength of the plaintiff's mark; 2) the similarity of the plaintiff's mark and defendant's mark; 3) the competitive proximity of their products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) defendant's good (or bad) faith; 7) the quality of defendant's product as compared to plaintiff's; 8) and the sophistication of the purchasers. *See Polaroid Corp v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961); *see also Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995).

The first four factors and the sixth factor favor The Heisman Trust. The Heisman Marks are strong, as the Heisman Trophy has been presented every year since 1936. As The Heisman Trust notes, the presentation of the award receives a

large amount of media attention each year, and the Heisman Marks are licensed to a variety of companies for the purpose of promoting the Heisman Trophy, including apparel companies, television networks, car manufacturers, and a video game company, among others.

 Smack Apparel contends that the Heisman Marks are not strong in the market involving apparel because the Heisman Marks were not registered in connection with those goods and services until 2007. However, the Court finds that the Heisman Marks, even the ones registered in 2007 and 2008, are "strong enough to do the job of preventing [the junior user's] use in another market." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 11:77 (4th ed. 2008) ("McCarthy"). As The Heisman Trust points out, Smack Apparel's reliance on *Essence Comm., Inc. v. Singh Indus., Inc.,* 703 F.Supp. 261 (S.D.N.Y.1988), is misplaced because there the court considered, and allowed, competing uses of the word "essence" for two different products with no obvious relationship, a magazine and a line of jewelry. Here, the Heisman Marks are strong in connection with "promoting interest, excellence and sportsmanship in intercollegiate football," as described in the various trademark registrations associated with the older marks, and they are certainly strong enough to prevent infringing uses in a closely related market, such as apparel for sports fans.

 Turning to the second *Polaroid* factor, the Heisman Marks and Smack Apparel's approximation of those marks are very similar. Smack Apparel uses the same type of font as used by The Heisman Trust's licensees and as appears on the Heisman Trust's website. The alterations that Smack Apparel has made to the word "Heisman" on its T-shirts—substituting the "S" with a "5" to write "HEI5MAN";

substituting the "IS" with a "15" to write "HE15MAN"; and inserting "THE" in smaller font to write "HE.IS.the.MAN"— do not sufficiently distinguish Smack Apparel's reference to "Heisman" from the mark itself. Smack Apparel's reference to "Heisman" is confusingly similar to The Heisman Trust's protected mark, especially when the T-shirts are viewed from a slight distance.

 The Smack Apparel T-shirts are also in close competitive proximity to the Heisman candidacy T-shirts produced by licensee Reebok International Ltd. ("Reebok"). According to the record before the Court, both the licensed T-shirts and the Smack Apparel T-shirts are available on websites devoted to college football fans, in college bookstores, fan shops, and sporting goods stores.

 There is no need for The Heisman Trust to make a showing that it will "bridge the gap" and offer a product like Smack Apparel's, because it has already granted a license to Reebok to produce apparel promoting potential Heisman Trophy winners. Smack Apparel contends that The Heisman Trust and Reebok have produced only a few series of T-shirts because they have had difficulties obtaining licenses from the universities where the candidates play. However, The Heisman Trust and Smack Apparel are still offering similar, competing products, and this factor does weigh in favor of The Heisman Trust.

Based on the record before the Court, there is some suggestion that Smack Apparel has acted in bad faith, in that it seems to be engaging in the same kind of conduct that led to the Settlement Agreement. Smack Apparel argues that it has not actually used the Heisman Marks, that it has not used any confusingly similar mark, and that therefore it is not in viola-

tion of the Settlement Agreement. The Settlement Agreement, however, was entered into after Smack Apparel produced a T-shirt with the word "Heistman," a reference to the Heisman mark that is very similar to the references at issue in the 2008 T-shirts. Smack Apparel's continuation of conduct that it has already promised to refrain from is a sign of bad faith.

Although the fifth, seventh, and eighth factors are less clear, neutral, or do not favor The Heisman Trust, the Court is persuaded by the *Polaroid* analysis as a whole that there is a significant likelihood of confusion between The Heisman Trust's licensed products and Smack Apparel's T-shirts. Five of the *Polaroid* factors weigh in The Heisman Trust's favor, some of them significantly so.

## D. NOMINATIVE FAIR USE DEFENSE [2]

 Smack Apparel argues that its use of the Heisman Marks is a protected nominative fair use as described in *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp.2d 463, 496 (S.D.N.Y.2008). The nominative fair use defense protects descriptive uses of a trademark in a manner such that a seller of a branded product is not forbidden from "accurately describing it by its brand name." *Id.* (internal quotation marks and citation omitted). A defendant may use a plaintiff's trademark under the nominative fair use doctrine "so long as there is no likelihood of confusion about the source of defendant's product or the mark-holder's sponsorship or affiliation." *Id.* (internal quotation marks and citation omitted). To prove the defense, there must be a showing that: 1) "the product or service in question [is] not readily identifiable without use of the trademark;" 2) "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service;" and 3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* (internal quotation marks and citation omitted). The Court finds that it is likely that The Heisman Trust would succeed at trial in proving that Smack Apparel cannot invoke the nominative fair use defense. Although Smack Apparel is arguably correct that it cannot produce T-shirts promoting Heisman Trophy candidates without referencing the Heisman Marks, the T-shirts here go beyond using as much of the marks as "reasonably necessary." The T-shirts are printed with the same type of font as used by The Heisman Trust on its licensed T-shirts and its website, and the references to the Heisman Marks go beyond merely providing information as to the T-shirts' purpose. The similarity of the designs on the T-shirts to the designs used by The Heisman Trust and its licensees suggest sponsorship or endorsement by the entity responsible for awarding the Heisman Trophy. It is not necessary for Smack Apparel to so closely mimic the HEISMAN mark to inform potential customers that its T-shirts are meant to show support for Heisman candidates. Smack

2. The Court notes that it is unclear exactly how the nominative fair use defense fits into the likelihood of confusion analysis. *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp.2d 463, 495 n. 27 (S.D.N.Y.2008) ("There is some dispute about whether 'nominative fair use' is properly characterized as an affirmative *defense* or as a *substitute* for the 'likelihood of confusion' inquiry (which itself is included in the second prong of the Second Circuit's two-pronged test)."); 4 McCarthy, § 23:11 (" '[N]ominative fair use' is an alternative method for analyzing if there is the kind of likelihood of confusion that constitutes trademark infringement."). However, as in *Tiffany (NJ)*, the Court does not need to determine which approach is appropriate because the outcome would be the same regardless.

Apparel therefore does not qualify for the nominative fair use defense.

### E. *PRELIMINARY INJUNCTION FOR BREACH OF CONTRACT AND TRADEMARK INFRINGEMENT*

The Heisman Trust has sufficiently demonstrated that the Heisman Marks are valid, and that Smack Apparel's use of the mark creates a likelihood of confusion. The Heisman Trust has therefore established a likelihood of success on the merits and irreparable harm, as required for a preliminary injunction in a Lanham Act trademark infringement action. The Court finds that this showing is also sufficient to establish irreparable harm and a likelihood of success on the merits of The Heisman Trust's claim for breach of the Settlement Agreement's prohibition on using the HEISMAN mark or any confusingly similar mark. The Court will therefore not address the request for a preliminary injunction based on the trademark dilution claim.

 The Court will not order The Heisman Trust to post a bond for the preliminary injunction. Rule 65(c) requires that a successful applicant for a preliminary injunction give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongly enjoined or restrained." District courts have "wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm." *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996) (internal quotation marks and citation omitted). Smack Apparel did not seek a bond in its papers opposing the application for a preliminary injunction or at oral argument, and it has not "shown that [it] will likely suffer harm

absent the posting of [a] bond" by The Heisman Trust. *Id.*

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated January 9, 2009 is amended to incorporate the discussion and decision set forth above; and it is further

**ORDERED** that, pursuant to Fed. R.Civ.P. 65(a), Smack Apparel Corporation is enjoined during the pendency of this action, or until subsequent order of the Court, from, within the territorial jurisdiction of the United States, using the Heisman Trophy Trust's registered or common law trademarks or service marks (collectively, the "Heisman Marks") or any other copy, reproduction or colorable imitation or simulation of the Heisman Marks on or in connection with Smack Apparel's goods or services; using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Smack Apparel's clothing or other goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to or dilutive of the Heisman Marks; using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Smack Apparel's clothing or other goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by the Heisman Trophy Trust, or are sponsored or authorized by or in any way connected or related to the Heisman Trophy Trust; and passing off, palming off, or assisting in passing off or palming off, Smack Apparel's website, clothing, or other goods or services, as those of the Heisman Trophy Trust, or one of its licensees, or otherwise continuing any and all

acts of unfair competition as alleged in the Amended Verified Complaint; and it is further

**ORDERED** that the parties confer and submit for the Court's approval a proposed case management plan to govern the schedule of pretrial proceedings in this case. The proposed case management plan is to be submitted within ten days of the issuance of this order.

**SO ORDERED.**