This Opinion is a
Precedent of the TTAB

Mailed: August 6, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Twenty-Two Desserts, LLC*

———

Serial No. 86586833

———

Jeffrey J. Schwartz of Schwartz Law Firm PC
    for Twenty-Two Desserts, LLC.

Jason Paul Blair, Trademark Examining Attorney, Law Office 104,
    Zachary Cromer, Managing Attorney.[1]

———

Before Cataldo, Bergsman, and Wolfson,
    Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Twenty-Two Desserts, LLC ("Applicant") seeks registration on the Supplemental

Register of the designation MALAI (in standard characters) for "Ice cream, gelato,

dairy-free ice cream, frozen yogurt, frozen desserts, ice cream sandwiches, sorbet,

freezer pops, and ice cream sundaes" in International Class 30.

---

[1] Jason Paul Blair was the Trademark Examining Attorney during prosecution and is no
longer with the Office.

The application originally sought registration on the Principal Register, and was filed under Section 1(b) of the Trademark Act, 15 U.S.C.§ 1051(b), based on Applicant's claim that it had a bona fide intention to use the proposed mark in commerce. The Examining Attorney refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that the term MALAI "refers to an Indian dairy ingredient comprised of a high fat coagulation from milk, somewhat similar to cream or butter, and is also the [Hindi] term for 'cream'" and as such is merely descriptive of Applicant's goods. July 20, 2015 Office Action. The Office Action required Applicant to state whether the goods "do or will contain malai, cream, or coagulated fat derived from dairy products." *Id.* Applicant replied that while it "confirms that i[t]s goods contain cream, it disagrees that the word 'MALAI' is merely descriptive." January 20, 2016 Response to Office Action.

After the Examining Attorney issued a final descriptiveness refusal, Applicant filed an Amendment to Allege Use and a Request for Reconsideration, amending its application to the Supplemental Register. The Examining Attorney refused registration on the Supplemental Register under Trademark Act Sections 23(c) and 45, 15 U.S.C. §§ 1091(c) and 1127, on the ground that MALAI is generic and thus incapable of distinguishing Applicant's goods. After the Examining Attorney made the genericness refusal final, Applicant appealed to this Board and filed a Request for Reconsideration, which was denied.

Both Applicant and the Examining Attorney have filed briefs, and Applicant filed a reply brief. We affirm the refusal to register.

## I.    Applicable Law

A mark proposed for registration on the Supplemental Register must be capable of distinguishing the applicant's goods or services. 15 U.S.C. § 1091. "Generic terms do not so qualify." *In re Emergency Alert Sols. Grp., LLC,* 122 USPQ2d 1088, 1089 (TTAB 2017); *see also Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 128 USPQ2d 1370, 1373 n.3 (Fed. Cir. 2018) (citing *In re Am. Fertility Soc'y*, 188 F.3d 1341, 51 USPQ2d 1832, 1833 (Fed. Cir. 1999)); *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed. Cir. 2001) (generic terms "are by definition incapable of indicating a particular source of the goods or services").

The Office must demonstrate a term is generic by "clear evidence" of generic use. *See In re Hotels.com LP*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009). "[R]egistration is properly refused if the word is the generic name of any of the goods or services for which registration is sought." *In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1638 (Fed. Cir. 2016) (quoting 2 J. Thomas McCarthy, McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:57 (4th ed. 2016)).

A generic term "is the common descriptive name of a class of goods or services." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.,* 786 F.3d 960, 114 USPQ2d 1827, 1830 (Fed. Cir. 2015) (citing *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.,* 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986)). There is a two-part test used to determine whether a designation is generic: (1) what is the genus (class or category) of goods or services at issue; and (2) does the relevant public understand the designation primarily to refer to that genus of goods or services? *Princeton Vanguard,* 114 USPQ2d at 1830 (citing *Marvin Ginn*, 228 USPQ at 530); *Couch/Braunsdorf*

*Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1462 (TTAB 2014). "The critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *Marvin Ginn,* 228 USPQ at 530.

Any term that the relevant public uses or understands to refer to the genus of goods, or a key aspect or subcategory of the genus, is generic. *Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1046-1047 (Fed. Cir. 2018). "[A] term is generic if the relevant public understands the term to refer to part of the claimed genus of goods or services, even if the public does not understand the term to refer to the broad genus as a whole." *Cordua*, 118 USPQ2d at 1638 (holding CHURRASCOS, a word that is generic for a type of grilled meat, to be generic for restaurant services because it referred to a key aspect of those services); *see also In re Nordic Naturals, Inc.*, 755 F.3d 1340, 111 USPQ2d 1495 (Fed. Cir. 2014) (CHILDREN'S DHA generic for DHA supplements for children); *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 227 USPQ 961 (Fed. Cir. 1985) (BUNDT generic for ring cake mixes, *i.e.*, the subcategory "bundt cakes.").

"Evidence of the public's understanding of the term may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers and other publications." *Royal Crown,* 127 USPQ2d at 1046 (quoting *In re Merrill Lynch, Pierce, Fenner, and Smith Inc.,* 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987)); *see also Cordua,* 118 USPQ2d at 1634; *Princeton Vanguard,* 114 USPQ2d at 1830; *In re Reed Elsevier Props. Inc.,* 482

F.3d 1376, 82 USPQ2d 1378, 1380 (Fed. Cir. 2007) (finding third-party websites competent sources for determining what the relevant public understands mark to mean).

## II. What is the Genus of the Goods at Issue?

Our first task is to determine the proper genus. In defining the genus, we commonly look to the identification of goods in the application. *See Reed Elsevier*, 82 USPQ2d at 1380; *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) (a proper genericness inquiry focuses on the identification set forth in the application or certificate of registration); *In re Serial Podcast, LLC*, 126 USPQ2d 1061, 1063 (TTAB 2018) (proper genus generally is "set forth by the recitation of services in each subject application."). Applicant has identified its goods as "ice cream, gelato, dairy-free ice cream, frozen yogurt, frozen desserts, ice cream sandwiches, sorbet, freezer pops, and ice cream sundaes." There is no dispute that the identification of goods adequately defines the genus.

## III. Who are the Relevant Purchasers?

The second part of the *Marvin Ginn* test is whether the term sought to be registered is understood by the relevant public primarily to refer to that genus of goods or services. "The relevant public for a genericness determination is the purchasing or consuming public for the identified goods." *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC,* 124 USPQ2d 1184, 1187 (TTAB 2017) (citing *Magic Wand*, 19 USPQ2d at 1553); *Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1351 (TTAB 2013)). Because there are no restrictions or limitations to the channels of trade or classes of consumers for the goods, the relevant consuming public

consists of the public at large, namely ordinary consumers who purchase and eat "ice cream, gelato, dairy-free ice cream, frozen yogurt, frozen desserts, ice cream sandwiches, sorbet, freezer pops, and ice cream sundaes."

## IV. How Does the Relevant Public Perceive MALAI?

The Examining Attorney argues that the word MALAI "is commonly used in the English language as a genus of rich, high-fat creams commonly used in Indian and South Asian culinary dishes, especially dishes with a sweet taste."[2] In support of his position, the Examining Attorney submitted a definition of "malai" from Definitions.net stating that:

> Malai is an Indian cooking ingredient. It is made by heating non-homogenized whole milk to about 80ºC for about one hour and then allowing to cool. A thick yellowish layer of fat and coagulated proteins forms on the surface, which is skimmed off. The process is usually repeated to remove most of the fat. Malai has about 55% butterfat. Buffalo milk is thought to produce better malai because of its high fat content.[3]

The Examining Attorney also submitted a Wikipedia definition of "Ras malai" as a type of dessert:[4]

---

[2] 6 TTABVUE 6. Citations to the briefs refer to TTABVUE, the Board's online docketing system. *See Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). Specifically, the number preceding "TTABVUE" corresponds to the docket entry number(s), and any number(s) following "TTABVUE" refer to the page number(s) of the docket entry where the cited materials appear. Citations to the examination record refer to the Trademark Office's online Trademark Status and Document Retrieval system (TSDR), by page number.

[3] At http://www.definitions.net/definition/malai, attached to December 18, 2017 Office Action at TSDR 10.

[4] July 20, 2015 Office Action at TSDR 16.

> "Ras malai or Rasha Malai is a dessert eaten in India, Pakistan and Bangladesh. The name *ras malai* comes from two words in Hindi: *ras,* meaning 'juice', and malai, meaning 'cream'."

The Examining Attorney also submitted articles, recipes, food blogs, and other material from several Internet sources that identify "malai" as a cream. For example, an article entitled "What is Malai in English? Using Malai in Indian Cooking" states that malai "is the word used to refer to a cream that is obtained from all sorts of milk."[5] A number of English-language recipes for Indian dishes, including dessert recipes, use "malai" as an ingredient. Some refer to "malai" as a type of ice cream. Examples of these materials include:

- Allrecipes.com features a Prawn Malai Curry recipe, noting that "the word 'malai' means cream";[6]

- Therecipesofindia.com instructs "How to make Malai/cream from milk";[7] and

- A post at tarladalal.com gives a recipe for "cream" and indicates that it is "also known as malai."[8]

- An online article entitled "Why is Biswapati Sarkar so obsessed with 'mango malai'?" states: "The mango malai ice cream is an exotic blend [that] has the tender taste of motherly love in the form of malai."[9]

- A recipe for making malai kulfi,[10] which it identifies as a "sweet Indian ice-cream," notes: "There are so many different

---

[5] At thespruce.com, attached to December 18, 2017 Office Action at TSDR 9.

[6] At http://allrecipes.com, attached to February 18, 2016 Office Action at TSDR 3.

[7] At http://www.therecipesofindia.com, attached to February 18, 2016 Office Action at TSDR 6.

[8] At http://www.tarladalal.com, attached to July 20, 2014 Office Action at TSDR 10.

[9] At https://www.quora.com, attached to February 18, 2106 Office Action at 19.

[10] Kulfi is "a type of Indian ice cream, typically served in the shape of a cone." At https://en.oxforddictionaries.com/definition/us/kulfi, accessed November, 2018. The Board

varieties and flavors of kulfi or gulfi. The traditional ones are malai, kesar, pista, mango, elaichi etc."[11] The recipe is shown below:[12]



may take judicial notice of dictionary definitions, including definitions or entries from references that are the electronic equivalent of a print reference work. *See Univ. of Notre Dame du Lac v. J. C. Gourmet Food Imps. Co., Inc.,* 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Petroglyph Games, Inc.,* 91 USPQ2d 1332, 1334 n.1 (TTAB 2009).

[11] "Malai Kulfi Recipe At Home Without Condensed Milk" at http://werecipes.com, attached to July 20, 2015 Office Action at TSDR 19. The "ILoveIndia.com" website posts a recipe for "pista malai ice cream" at http://festivals.iloveindia.com, attached to February 18, 2016 Office Action at TSDR 20.

[12] July 20, 2015 Office Action at TSDR 27.

- In a different kulfi recipe, kulfi is described as a "rich frozen dessert that is made with reduced full fat milk," and the milk is described as having "bits of malai o[n] top."[13] The heading to the recipe reads: "Kulfi recipe, traditional Indian ice cream, easy malai kulfi."[14] The finished product is pictured: [15]



Traditional Indian ice cream, kulfi

- Posts from readers of the website SharmisPassions.com react to an article entitled "Homemade Fresh Cream – How to make fresh cream" that explains how to collect malai from boiled milk, with comments such as: "nothing like creaminess in gravies from homemade malai!" and "My mom … will collect the malai from milk and when the container is full she will whisk it to make cream or butter."[16]

- The article explains the method for making malai:[17]

---

[13] At http://www.sailusfood.com, attached to February 18, 2016 Office Action at TSDR 12.

[14] *Id.* at TSDR 11.

[15] *Id.* at TSDR 14.

[16] At https://www.sharmispassions.com, attached to May 4, 2018 Denial of Request for Reconsideration at TSDR 2.

[17] Id.

Method:

1. Heat milk and boil for sometime say 3-5mins(depends on what type of milk you get).After the milk is boiled, let is sit aside for 30mins or few hours in the fridge so that thick malai gets collected at the top. Carefully take the malai with a spoon and collect it in a clean container else you can use a strainer to take the malai. I usually collect the malai whenever I boil milk so twice a day. The malai quantity depends on the type of milk you get.



2. Keep collecting the malai in the same container and refrigerate it. Keep refrigerated and let it sit for atleast 1 day for your instant cream say if you need just few tbsps.Just whisk it well and Your cream is ready to use. But if you want it in bulk then keep collecting for atleast 10-15 days or till you think you have a fair amount of malai collected.



3. After the container is full you can either make butter out of it else use it as cream as such. Just whisk it well using a hand whisk for few mins until its creamy without any lumps.You can also use a electric whisk to beat it.Your cream is ready for use.



So remember to collect your malai everytime you boil milk to make your batch of homemade fresh cream ok?! 😊

- Wikipedia entries for "malai" over time have reflected some content changes but consistently have referred to "malai" as cream and a cooking ingredient.[18]

---

[18] *See* https://en.wikipedia.org, attached to July 20, 2015 Office Action at TSDR 8 (defining malai as an Indian cooking ingredient. Under "Uses," it read: "Cream is the main ingredient" for sweet dishes); https://en.wikipedia.org, attached to October 4, 2017 Office Action at TSDR 17 (defining malai as "a South Asian cooking ingredient." Under "Uses," it read: "Malai is a

We agree with the Examining Attorney that the evidence in the record shows that "malai" has an independent meaning in English for a specific cooking ingredient, cream. We find that the evidence establishes that "malai" has been used to identify a type of (typically sweet) creamy food made principally from malai, including items that fall within (i.e., are a sub-group or type of) the broad identification of goods "Ice cream, gelato, dairy-free ice cream, frozen yogurt, frozen desserts, ice cream sandwiches, sorbet, freezer pops, and ice cream sundaes," such as "malai kulfi," a type of Indian ice cream, "pista malai ice cream" and "mango malai ice cream."[19] The record contains clear evidence that consumers would understand the proposed mark MALAI to refer to a type of ice cream made principally with malai. Applicant's proposed mark MALAI is thus incapable of distinguishing the source of the products.

Applicant presented several arguments against the refusal. We have carefully considered Applicant's arguments and the evidence submitted to support them, but we find them unpersuasive.

We address first Applicant's argument against application of the doctrine of foreign equivalents.[20] Although the record includes translations of the Hindi word

---

major ingredient in malai kofta dumplings and in sweet dishes like *malai pedha*, *ras malai* and *malai kulfi*."); https://en.wikipedia.org, attached to December 18, 2017 Office Action at TSDR 2 (reverting to defining malai as: "a cooking ingredient from the Indian subcontinent," but under "Uses," continued to indicate that "Malai is a major ingredient" in sweet dishes).

[19] To the extent that "dairy-free ice cream" and sorbet may not contain malai, we note that a term need not be generic for all identified goods or services to be found generic. *See Cordua*, 118 USPQ2d at 1635.

[20] In arguing against application of the doctrine of equivalents, Applicant submitted three identical form declarations from individuals who state that they are fluent in both English and the Hindi language, that they are ordinary American consumers of goods such as those made by Applicant, and that they would not stop and translate the Hindi word MALAI into

"malai" to mean "cream" in English, the Examining Attorney did not rely on application of the doctrine of foreign equivalents to find MALAI is generic. The doctrine of foreign equivalents is a guideline pursuant to which foreign-language terms in marks may be translated into English and serve as evidence that the English equivalent is understood among the relevant consumers as referring to the goods to show, e.g., that a term is generic. *See, e.g., Cordua*, 118 USPQ2d at 1637 (discussing the doctrine of foreign equivalents and noting that the USPTO "would have been justified" in applying it to the Spanish and Portuguese word "churrasco" by translating that word into English as "barbecue" and assessing whether "barbeque" is generic for restaurant services). But a mark containing a foreign word also can be found generic by showing that "the mark would not be translated because of the inherent nature of the mark." *In re Thomas*, 79 USPQ2d 1021, 1025-1026 (TTAB 2006). For example, as is the case here, the foreign word itself, not its English translation, has an understood meaning in the English language among the relevant consumers as referring to the applied-for goods. *Cordua,* 118 USPQ2d at 1637 (noting the USPTO did not apply the doctrine of foreign equivalents to find "churrasco" generic, but instead found that "'churrasco' is used in the *English* language to refer to grilled meat") (emphasis in original); *see also Le Continental Nut Co. v. Le Cordon Bleu S.A.R.L.*, 494 F.2d 1395, 181 USPQ 646 (CCPA 1974) (finding that CORDON

---

an English language equivalent but would take it as a trademark. As discussed above we do not apply the doctrine; moreover, three declarations are too few in number to make a determination as to how consumers in general would perceive a term. *Cf. In re Florists' Transworld Delivery*, 106 USPQ2d 1784, 1794 n.9 (TTAB 2013) (criticizing four form declarations as too few in number and lacking geographic diversity). Attached to Applicant's April 26, 2018 Request for Reconsideration at TSDR 8-13.

BLUE, while literally translated as BLUE RIBBON, would not be translated by the American public because the two terms create different commercial impressions, CORDON BLEU having been adopted into the English language and acquiring a different meaning than BLUE RIBBON); *In re Tia Maria, Inc.,* 188 USPQ 524 (TTAB 1984). Here, the Examining Attorney asserted that MALAI "not only means 'CREAM' in Hindi …, but is also commonly used in the English language as a genus of rich, high-fat creams commonly used in Indian and South Asian culinary dishes, especially dishes with a sweet taste."[21] The Examining Attorney based the refusal on evidence showing use of "malai" in English-language sources available to U.S. consumers. Accordingly, we need not apply the doctrine of foreign equivalents in assessing whether MALAI is generic for the applied-for goods.

Applicant also argues that the primary meaning of the term "malai" to consumers will be as "the best or choicest part of a thing--i.e., the cream of the crop," citing one of the definitions given at Hamariweb.com for the term "cream": "(n.) The best or choicest part of a thing; the quintessence; as, the cream of a jest or story; the cream of a collection of books or pictures."[22] Although the word "cream" may have other connotations, the record does not support Applicant's contention that consumers will perceive "cream of the crop" as an alternate meaning of "malai" for the goods in question. Further, because Applicant seeks registration on the Supplemental Register, Applicant has conceded that the term is merely descriptive of the goods;

---

[21] 6 TTABVUE 6.

[22] At http://www.hamariweb.com/dictionaries/cream_ hindi-meanings. Applicant's November 13, 2017 Response at TSDR 3.

thus, "arguments regarding other meanings for [MALAI] and double entendre are inapplicable." *In re Rosemount Inc.*, 86 USPQ2d 1436, 1439 (TTAB 2008) ("Reducer" is generic for "flow meters for measuring flow through pipes" because piping that joins pipes of a different diameters are called reducers).

Applicant also argues that there is no evidence that the relevant consumers will understand the term "malai" to name the genus of the goods because "a term that is a generic name of an ingredient is not necessarily a generic name of a product containing that ingredient," pointing to two district court cases involving trademark infringement claims as support: *Haydon Switch & Inst., Inc. v. Rexnord, Inc.*, 4 USPQ2d 1510, 1515 (D. Conn 1987) (holding PLANETGEAR not generic for counters that contain planetary gears) and *Blue & White Food Prods. Corp. v. Shamir Food Industries, Ltd.*, 76 USPQ2d 1940 (S.D.N.Y. 2004) (holding SHAMIR SALADS, with SHAMIR translating to dill, not generic for salads, dips, spreads, and herring products, even though dill may be ingredient). Those cases involve different marks with different factual records and do not involve the issue of registrability. They do not control our consideration of this case. Although there is no per se rule that the name of any ingredient in a product will necessarily be generic, where, as in this case, the evidence shows that the relevant public would understand an ingredient name to refer to a key aspect or subcategory of the genus of goods, it is generic for those goods. *See Royal Crown,* 127 USPQ2d at 1046; *see also In re Empire Tech. Dev. LLC,* 123 USPQ2d 1544 (TTAB 2017) (COFFEE FLOUR generic for flour made from coffee berries); *In re Demos,* 172 USPQ 408, 409 (TTAB 1971) ("CHAMPAGNE" merely

names principal ingredient of applicant's salad dressing and is unregistrable); *In re Hask Toiletries, Inc.*, 223 USPQ 1254 (TTAB 1984) (HENNA 'N' PLACENTA generic for hair conditioner because "henna" and "placenta" refer to the two key ingredients of the product and the combination created no new significance).

## V. Conclusion

Taken as a whole, the evidence indicates that the relevant public would understand MALAI primarily to refer to a key aspect or a type of "ice cream, gelato, dairy-free ice cream, frozen yogurt, frozen desserts, ice cream sandwiches, sorbet, freezer pops, [or] ice cream sundaes." Accordingly, the term is generic "and should be freely available for use by competitors." *In re Cent. Sprinkler Co.,* 49 USPQ2d 1194, 1199 (TTAB 1998). *See generally Cordua,* 118 USPQ2d at 1635; *Marvin Ginn,* 228 USPQ at 530; *In re 1800Mattress.com*, 92 USPQ2d 1682, 1685 (Fed. Cir. 2009).

## Decision:

The refusal to register Applicant's mark on the Supplemental Register is affirmed.